HAYS v. M'KEE.

'The defendant, by pleading to the action, waives all objection on account of the want of process.

Neither the capias ad respondendum, nor the sheriff's return on it, can be noticed by this Court, unless it be made a part of the record in some way known to the law.

The addition of the similiter is only a matter of form, and the want of it is aided by a verdict.

ERROR to the *Franklin* Circuit Court.—Trespass by *M'Kee* against *Hays* and several others, for breaking into his close and taking away his goods. Plea of justification. Replication in denial, concluding to the country. No similiter. Verdict of guilty against *Hays*—damages 149 dollars and 20 cents; and of not guilty as to the others. Judgment against *Hays* agreeably to the verdict.

*Tuesday, November 7.*

SCOTT, J.—The plaintiff in error alleges that, prior to the trial, he was not served with process, nor had he appeared to the action. It is stated in the record, that at the *October* term in the year 1821, the parties came by their attorneys, and the defendants were ruled to plead; and that on the following day several defendants, of whom the plaintiff in error was one, filed their pleas pursuant to the rule of Court. By this statement it would seem that he was present in Court, either in his proper person or by his attorney, and pleaded to the action; by which he waived any advantage which he might have taken of the want of process (1).

It seems to have been taken for granted, that this Court would notice the sheriff's return to the writ, and see that it was not served on *Hays;* but as the writ and return are not made part of the record in any way known to the law, we cannot regard them as evidence of that fact (2).

It is further assigned as error that there was no issue, there being no similiter added to the replication. It was formerly held that the want of a similiter was a substantial defect and could not be aided by a verdict; but that doctrine has been overruled. The addition of the similiter is now considered matter of form, and the want of it is aided after verdict. The substance of the issue is the affirmative and the negative, con-

Nov. Term,
1826.

HAYS
v.
M'KEE.

tained in the pleadings: the similiter is merely an expression of the willingness of the party to submit his case to a jury.— Vide 1 Chitt. 571.—2 Saund. 319. n. 6.—*Harvey* v. *Peake*, 3. Burr. 1793 (3).

*Per Curiam.*—The judgment is affirmed, with 1 *per cent.* damages and costs.

*Lane,* for the plaintiff.

(1) Vide *Lewis* v. *Brackenridge*, Vol. 1. of these Rep. 112.

(2) Vide *Shields* v. *Cunningham*, Vol. 1. of these Rep. 86. In cases of judgments by default for want of appearance, the writ, with the indorsement, is a necessary part of the record. *Nadenbush* v. *Lane*, 4 Rand. 413.

(3). The tendering of an issue to the country by one party, viz. the prayer to have the cause tried by a jury; and the acceptance of the issue, that is, the consent of the opposite party to have the cause so tried; was a mode of proceeding adopted by the parties in *England* at an early period, in order to have certain causes tried by an *inquisition* of *twelve men*, which, without this *mutual consent*, must have been at that time decided by *wager of battel*. Steph. on Plead. Appendix, note, 34.—1 Reeves' Eng. Law, 334. The law has been long since changed; and the right to a trial of questions of fact by a jury no longer depends upon the consent of the parties. If an issue to the country be properly tendered by either of the parties, the other is *compelled* to accept of it. The party tendering the issue may even add the similiter himself, if his opponent should fail to do it. Hence it appears, that the adding of the similiter— the mere entry of the party's consent (which he cannot refuse to give) to a submission of the cause to a jury—is now only a matter of form; and that its omission is aided by verdict. It must be admitted, however, that there is some confusion in the books on this subject. Besides the authorities cited in the text, vide Steph. on Plead. 254, 255.— Gould's Plead. 313—316.—*Jared* v. *Goodtitle*, Vol. 1. of these Rep. 29, and the cases cited in note (2).—2 Arch. Pr. 272, 273.—2 Tidd's Pr. 8th Lond. ed. 956.

Having had occasion in this note to mention the trial by *wager of battel*, the reporter will, perhaps, be excused for adding a short notice of a proceeding of this kind which recently occurred in *England:*—

"In the year 1817 *Mary Ashford*, a young woman residing in *Warwickshire*, was murdered under circumstances exciting the strongest suspicion against *Abraham Thornton*, who had been her companion the previous evening. He was acquitted on his trial, upon evidence of an alibi, which apparently covered the short period in which the crime was perpetrated; but the brother of the deceased was advised to bring his writ of appeal, and the proceedings thereon in the Court of K. B. excited the greatest interest in the public mind. The accused, when brought into Court, pleaded as follows:— 'Not guilty, and I am ready to defend the same by my body.' And thereupon taking off his glove, he threw it upon the floor of the Court. The appellant, after taking time, counterpleaded, setting forth all the facts tending to prove the guilt of the appellee, and praying that he might not be allowed his wager of battel; to which the latter, in reply, stated the evidence in his favour, which led to his acquittal. Upon these pleadings, after an elaborate argument by counsel, the Court held that there was not sufficient on the face of the proceedings to justify them in refusing the battel; but whether the Court should allow the appellee his wager of battel, or to go without day, they did not then

determine; suggesting to the appellant the propriety of considering whether he would wish any further judgment to be given. A few days after, the appellant by his counsel stated, that he prayed no further judgment of the Court, whereupon the Court ordered the judgment on the appeal to be stayed, and the appellee to be discharged. See the case at length, 1 Bar. & Ald. 405.

"In the next session of parliament an act was passed to abolish appeals of murder, treason, felony, or other offences, and wager of battel, or joining issue and trial by battel in writs of right.   59 Geo. 3, c. 46."—3 Chitt. Bl. 337, note (6).

The *American* minister, Mr. *Rush,* was present at the argument of this extraordinary case.   The following are his remarks:—

"*April* 16, [1818,] went to the Court of King's Bench to hear the argument in the case of wager of battle.   The parties were present.

"By the ancient law of *England,* when a person was murdered, the nearest relation of the deceased might bring what was called an appeal of death, against the party accused of the murder.   Under this proceeding, the accuser and accused, fought.   The weapons were clubs.   The battle began at sunrise, and was in presence of the judges; by whom also all formalities were arranged.   Part of the oath was, that neither combatant would resort to witchcraft.   If the accused was slain, it was taken as a proof of his guilt; if the accuser, of his innocence.   If the former held out until star-light, that also attested his innocence.   If either yielded whilst able to fight, it worked his condemnation and disgrace.   Those who wish a full description of these curious proceedings, may seek it in Sully, or continental writers of an earlier day, as Froisart; the custom having been imported into England by the *Normans.*   The foregoing summary will give a general idea of it.

"It was a mode of trial for dark ages.   *Ashford* the appellor, had accused *Thornton* the appellee, of the murder of one of his relations, and the latter desired to fight. In the highest tribunal of the most enlightened country in *Europe,* I was listening to a discussion whether or not this mode of trial was in force in the nineteenth century!   It was difficult to persuade myself of the reality of the scene.   Mr. *Chitty,* a lawyer of eminence, argued against the right of battle.   Mr. *Tindall* had argued on the other side, on a former day.   Fleta, Bracton, the Year-Books, and other repositories of ancient law were ransacked.   Abundant ability was displayed on both sides.   The greatest order prevailed; even gravity.   The judges were in their robes.   About seventy lawyers sat in front of them; all in gowns and wigs, listening, apparently, with profound attention.   Finally, the judges decided that trial by battle *was* in force; for it had never, it seems, been repealed.

"In the end, no battle was fought.   A technical flaw interposed to prevent it, and parliament passed a repealing statute.   But the case marks an incident in *English* jurisprudence, having come near to converting the Court of King's Bench into a theatre for prize fighting."—*Rush's Mem.* 202.