Waters *et al. v.* Simpson *et al.*

George W. Waters *et al.*, appellants, *v.* Ebenezer Simpson *et al.*, County Commissioners of Pope County, appellees.

*Appeal from Pope.*

The County Commissioners, in December, 1838, loaned to an individual a portion of the Internal Improvement Fund, on twelve months, with twelve per cent interest, and took his note with security. At their March term 1839, the County Commissioners directed an order to be entered to the effect, that the loans previously made should be extended to the 4th day of March, 1841, on the condition that the borrowers should keep the county secure in the payment of the notes and pay the interest annually. The note was sued in March, 1845, and the securities only were served. They filed several pleas setting forth, in substance, *first*, that the loan was unauthorized, and, therefore, that the note was made without any good or valuable consideration; *secondly*, that the note was paid; *thirdly*, that the order of the March term 1839, was made without their knowledge or assent, and that their principal had complied with the order, by which they were released and discharged; and *fourthly*, the same, and also, that their principal had become insolvent, &c. The second plea was replied to, and a demurrer interposed to the others, which was sustained, and the defendants abided thereby. The Court then, without noticing the second plea, rendered a judgment by *nil dicit: Held*, that the first, third and fourth pleas were bad, the County Commissioners' Court being authorized to make the loan, and the order of postponement not being a contract binding on them: *Held*, also, that there being a replication to the second plea, and no *similiter* added, the Circuit Court was not bound to notice the plea, no issue having been made.

It is a well established principle of law, that the contract of a surety is to be construed strictly, and he is not to be held responsible beyond the precise terms of his undertaking. His risk is not to be increased, or his responsibility extended without his assent.

A binding agreement between the creditor and the principal debtor, which materially changes the terms of the original contract, and to which the surety has not expressly or tacitly consented, will discharge the surety both at Law. and in Equity. It is not material whether the surety has been damnified or not; a new contract has been made, and he is absolved from all liability.

In order to discharge a surety, by reason of an extension having been given to the principal, the agreement must be founded on a good consideration, and binding in law on the parties to it. But a promise to give a further day of payment, which is not based upon some new and adequate consideration, is a mere *nudum pactum*, not precluding the creditor from sueing the principal. The right of the creditor to prosecute the debtor must be suspended by the new contract.

After judgment on demurrer, a joinder in demurrer will be presumed; so, also, the want of a *similiter* is aided after a verdict.

Debt in the Pope Circuit Court, brought by the appellees against the appellants. The cause was heard at the May term 1845, before the Hon. Gustavus P. Koerner, on demur-

rer to pleas. The demurrer was sustained, and the defendants abiding by the demurrer, judgment by *nil dicit* was rendered by the Court for $112 debt, and $60·10 damages.

The substance of the pleas is briefly stated by the Court in their Opinion.

*D. J. Baker,* for the appellants.

1. A final judgment for the debt sued for cannot be rendered in favor of the plaintiff upon sustaining a demurrer to some of the pleas of the defendants, without first disposing of the issue of fact joined upon the other plea filed by them. *Lyon* v. *Barney,* 1 Scam. 387.

2. An agreement between the payees of the note or obligation sued on in this case, and Thompson, the principal in the same, whereby further time than the note specified was given to the principal for the payment thereof, without the consent of his sureties, operates to release them from their obligation to pay. Chitty on Bills, 408, n [*m*]; do. 410, n [*u*]; 2 Bos. & Pul. 61.

Contract of surety is to be construed strictly, and the liability is not to be extended beyond the terms of the contract. *Miller* v. *Stewart,* 5 Peters' Cond. R. 727.

If a creditor, without the knowledge and consent of the surety, expressly or tacitly yielded, give time to the principal by enlarging the credit beyond the period mentioned in the contract, the surety in the bond, or other instrument, is discharged both at Law and in Equity. 1 Peters' Dig. 379.

*J. C. Conkling,* for the appellees.

Mere delay to prosecute does not release the surety. *Hunt's Ex'r* v. *Bridgham,* 2 Pick. 582; *Oxford Bank* v. *Lewis,* 8 do. 458; *Blackstone Bank* v. *Hill,* 10 do. 129; *Fulton* v. *Mathews,* 15 Johns. 433.

There must be a consideration for the contract to delay. *Gahn* v. *Niemcewicz,* 11 Wend. 319.

If no new security be given requiring a new remedy, the contract is not varied, and the delay is gratuitous. Ib.

New agreement to pay interest creates no additional obli-

gation. *Reynolds* v. *Ward*, 5 Wend. 504; *Pabodie* v. *King*, 12 Johns. 426.

If creditor neglect to sue, the statute points out the remedy. 1 Blackf. 393; *Fulton* v. *Mathews*, 15 Johns. 433.

*Similiter* should have been added by defendant to the replication; by not doing so, he abandons his plea. *Earle* v. *Hall*, 22 Pick. 102.

The loan was not illegal. Laws of 1838–9, 119, 120; 1844–5, 50; *Kitchens* v. *Co. Com'rs of Greene Co:*, 4 Scam. 485.

Legal interest was in plaintiffs. *Manlove* v. *McHatton*, 4 Scam. 96.

The Opinion of the Court was delivered by

TREAT, J.* By virtue of the fifteenth paragraph of the eighteenth section of the "*Act to establish and maintain a general system of Internal Improvement*," approved February 27th, 1837, the county of Pope became entitled to, and received a portion of the sum of $200,000 appropriated therein. By the direction of the County Commissioners' Court, this fund was loaned out on personal security for the term of one year, at an interest of twelve per centum per annum. On the 24th of November, 1824, Thomas H. Thompson borrowed $100, and gave his note, with Waters, Read, and Freeman, as securities, to the County Commissioners, for the sum of $112, payable in twelve months, and bearing interest after maturity at the rate of twelve per centum per annum. At the March term 1839, of the County Commissioners' Court, an order was made and entered on its records to the effect, that the loans previously made should be extended to the 4th of March, 1841, on the conditions that the borrowers should keep the county secure in the payment of the notes, and should pay the interest annually. In March, 1845, the County Commissioners commenced an action of debt against Thompson and his securities. The declaration was on the note before mentioned. The securities were alone served with process. They pleaded, *first*, that the

---

* WILSON, C. J., did not sit in this case.

loan was made without authority of law, and, therefore, the note was made and executed without any good or valuable consideration; *second*, payment of the note, concluding with a verification; *third*, that the order of March term 1839, was made without their knowledge or consent, and that Thompson, without their knowledge or consent, availed himself of, and complied with the terms and conditions of the order, to which the County Commissioners assented, and therefore they were released and discharged; and, *fourth*, substantially as in the third plea, with the additional averment, that. Thompson had become insolvent. There was a replication to the second plea, concluding to the country, to which no *similiter* was added by the defendants. The Court sustained a demurrer to the first, third, and fourth pleas, and the defendants abided thereby. Thereupon, without noticing the second plea, the Court rendered judgment by *nil dicit*, against the defendants for the debt, $112, and $60·10 damages, by the clerk assessed. The defendants prosecuted an appeal to this Court, and they now assign for error, the decision of the Circuit Court sustaining the demurrer to the first, third, and fourth pleas.

The defence interposed by the first plea cannot be sustained. The County Commissioners had the power to loan the fund, and take security for its payment. This was a matter of discretion on their part, and there is no just or valid objection to the manner in which it was exercised. This question was directly settled by this Court in the case of *Kitchens* v. *Greene Co.*, 4 Scam. 485, and we are entirely satisfied with the principles of that decision.

The third and fourth pleas are in substance alike, and intended to present one and the same defence, and both will be considered together. It is insisted, that these pleas show a valid and operative agreement between the county and Thompson, by which the time for the payment of the note was postponed beyond the period fixed, when the note was executed and the securities incurred their responsibility. If this position be correct, the conclusion contended for is inevitable, and the defence must be sustained. It is a well estab-

lished principle of the law, that the contract of a surety is to be construed strictly, and he is not to be held responsible beyond the precise terms of his undertaking. His risk is not to be increased or his responsibility extended without his assent. The creditor is not permitted to vary the terms of the contract, for if allowed to do it without consulting the surety and obtaining his consent, he might thereby add to the liability and increase the hazard. A binding agreement between the creditor and the principal debtor, which materially changes the terms of the original contract, and to which the surety has not expressly or tacitly consented, has the effect to discharge the surety both at law and in equity. And when this has been done, Courts will not stop to inquire whether the surety has been damnified or not. A new contract has been made, and he is absolved from all liabilty. This doctrine was asserted by this Court in the cases of *Davis* v. *The People*, 1 Gilman, 349, decided at the last term, and *The People* v. *McHatton*, decided at the present term, and has been repeatedly recognised by the highest judicial tribunals of the country. It is not, however, every agreement to extend the time of payment, which will produce this result. The agreement must be founded on a good consideration, and binding in law on the parties to it. A promise to give a further day of payment, which is not based on some new and adequate consideration, is a mere *nudum pactum*, and because it does not preclude the creditor from sueing the principal, the surety is not discharged. The agreement must be of such a character, that the creditor's right to prosecute the debtor and enforce the performance of the contract is suspended; such that the debtor may take advantage of by way of defence, to defeat a prosecution instituted on the original contract in violation of the agreement. Such an agreement will release the surety, for while it suspends the right of action on the part of the creditor, it equally suspends the right of the surety to make payment, and then resort to his principal for indemnity. Admitting that these principles must govern us in the decision of this case, we proceed to inquire whether the allegations of the pleas present an available defence.

The note was to become due in twelve months, and if not promptly paid, was to bear the highest rate of interest allowed by the law. The securities bound themselves to pay the amount of the note, and the interest which might accrue after it became due. On the default of Thompson to make payment at the expiration of the year, the county had an undoubted right of action against him and his securities, and the securities the reciprocal right to release themselves by paying the note, and making the principal their debtor for money paid to his use. It is contended, that their rights were alike suspended by the order of the Commissioners' Court, made between the date and maturity of the note. The order, *per se*, could have no such effect. It was not a contract, but a mere declaration, subject to revocation at the pleasure of the Court. It left the rights and remedies of the parties unimpaired; the county had still the power to sue, and the surety the right to pay. At the time the loans were made, the Commissioners did not contemplate the loaning of the fund for a longer period than one year, and they probably then intended to call it in at the expiration of the year, and apply it directly to the purposes for which it was granted by the Legislature. In the mean time, they became convinced it would be more conducive to the interests of the county, to continue to loan the fund, and expend the income on the objects designated by the grant. The order, no doubt, was intended by them as a public expression of this opinion, and an official declaration for the guidance and direction of the agents specially charged with the loaning and receiving of the fund, and the safe keeping of the securities. As the fund was to be kept out on interest, the Commissioners were willing that those who had borrowed it should continue to retain it, so long as the interest should be punctually paid, and the ultimate payment of the debt should not be hazarded. Where this was the case, there could be no reason for insisting on prompt payment of the obligation, for if collected, the proceeds would again be loaned. The sole objects of the Commissioners were to keep the fund secure from loss, and be in the receipt of the accruing interest; and while these objects

were attained, it was a matter of indifference who were the debtors to the fund. Notwithstanding this order, the Commissioners reserved an absolute control over the loans. If the interest was not paid, or the debt became insecure, the county was at full liberty to institute proceedings for the fulfilment of the contract. This case differs essentially from the cases before referred to. In those cases the Legislature, by express laws, extended the time for payment beyond the period provided for when the obligations were executed by the sureties. The laws were binding on the State, and prohibited the officers charged with the superintendence of the revenue, from instituting proceedings against the collectors till the extension had expired. There is nothing on the face of the pleas which, in the opinion of the Court, shows that any binding agreement was made between the Commissioners and Thompson respecting the payment of the note. They simply allege that Thompson accepted of the conditions of the order, and complied with them. It is difficult to determine what was intended by these general allegations. This is left to conjecture. The *quo modo* of the compliance should have been stated. It is very clear that no binding contract could grow out of the payment of the interest. The note already bore interest, and the rate could not be increased. The payment of the interest would be doing nothing more than was required of the principal and sureties by the original contract. This would not be a sufficient consideration to support a promise to forbear the collection of the note. Such a promise would be a mere gratuity, and could not be enforced. On this point the authorities are abundant. *Pabodie* v. *King*, 12 Johns. 426; *Fulton* v. *Mathews*, 15 do. 433; *Oxford Bank* v. *Lewis*, 8 Pick. 458; *Reynolds* v. *Ward*, 5 Wend. 501; *Gahn* v. *Niemcewicz*, 11 do. 312.

The giving of additional security by the principal, might be a good consideration to sustain an agreement to extend the time for payment. The pleas both fail to aver that this was done. It is not a fair inference from the allegations of the pleas, but the inference rather is, that the Commissioners were satisfied with the contract as it stood, and, therefore, failed to require further security. If fresh security was

accepted, and in consequence thereof, further forbearance of the debt was given, the pleas should have stated it specifically.

The note was made payable to one set of Commissioners, and the suit was brought in the names of their successors in office, who do not aver in the declaration that the note was indorsed to them. This was assigned for error. It was, however, abandoned on the argument, and we are not called on to decide whether the suit was properly brought in the names of the appellees. Again, it is assigned for error, that the judgment is not only against the securities, but against Thompson, who was not served with process, and who did not submit his person to the jurisdiction of the Court. An inspection of the record does not sustain this assignment of error. The record shows that the judgment was only rendered against the parties who had pleaded.

It is also assigned for error, that the Court erred in rendering judgment before disposing of the issue on the second plea. There was, technically, no issue on that plea. The plaintiffs in their replication tendered an issue, and expressed their willingness to submit the question of payment to the jury, and it was then the duty of the defendants to have made it complete by adding the *similiter.* Until the *similiter* was added, the Court was not bound to notice the plea. After judgment on demurrer, a joinder in demurrer will be presumed. *Wilcox* v. *Woods*, 3 Scam. 51. So the want of a *similiter* is aided after verdict, *Hays* v. *McKee*, 2 Blackf. 11. But these intendments are in favor of the judgment of the inferior Court. When objections of this character are interposed by the party who has caused the omission, we think a different rule should be adopted. To sustain this error and reverse the judgment, would be to allow the defendants to take advantage of their own wrong, a thing the law abhors. On a review of the whole case, we do not hesitate to affirm the judgment of the Circuit Court.

Judgment affirmed with costs.

*Judgment affirmed.*