# Edwards's Appeal.

*Revocation of will by subsequent marriage, and the birth of posthumous child.*

1. Marriage, after the making of a will, revokes it as to the widow of the testator; and the birth of a posthumous child, not provided for in the will, has the same effect.

2. An unmarried man by will directed the sale of his real and personal estate, the investment of the proceeds, and the payment of the interest to a lady whom he afterwards married; after his death a son was born, who was not provided for in the will. *Held*, that as to the widow, the will was revoked by the marriage; and as to the son, by his birth after the testator's death, without being provided for therein; and that the estate must be distributed as in cases of intestacy.

[Edwards's Appeal.]

3. The power of sale granted to the executors in the will was not a conversion, which would entitle the widow to one-third of the fund produced by sale of real estate, as personalty; for conversion is a question of intention, and does not necessarily result from a power of sale given to executors.

APPEAL from the Orphans' Court of *Philadelphia.*

This was an appeal by Mrs. Sarah Edwards, from the decree of the court on the distribution of the proceeds of the real estate of William A. Edwards, deceased, which was sold by the executors of his last will and testament, under a power contained in said will.

The case was this:—William A. Edwards, the testator, on the 10th September 1856, made his will, of which the material provisions are as follows:—

" Item.—It is my will, and I direct my executors herein named to hold all the rest, residue, and remainder of my estate, real, personal, and mixed, in trust for the following uses; that is to say: First. If they or the survivor of them, my said executors herein named, shall see proper, I hereby authorize, empower, direct, and give authority to them to sell any portion or all of my said estate, and invest the proceeds thereof as in their judgment shall be best (the purchaser to be discharged from all liability as to the proceeds of said sale), and when said estate shall be sold and yield an income, be the same greater or less, the said income shall be paid quarterly to my friend, Sarah Devitt, daughter of the late T. J. Devitt, clear of all charges but commissions and taxes, so long as my said friend shall live, either single or married; and if she shall die at any time, leaving lawful issue, then it is my will that my said executors, by good and legal assurances, shall convey all my said estate to the heirs of the body of my friend, the said Sarah Devitt, share and share alike. It is my desire that my said estate shall be made to yield an income immediately after my decease, in order that my friend, the said Sarah Devitt, shall enjoy the benefit thereof."

Mr. Edwards was married to Miss Devitt on the 11th of February 1858. He died on the 10th of August 1860, leaving his wife *enceinte* of a son, who was born on the 25th of August 1860. The child was named William Edwards, and is still living. The personal estate of the testator was insufficient for the payment of his debts, whereupon the executors sold the real estate, and brought the proceeds into their account, which was referred for settlement to A. I. Fish, Esq., as auditor.

The auditor reported, in substance, that there was a provision for the issue of the testator, that the will was therefore not revoked by the birth of the child, that a life estate was created by the will in Mrs. Edwards, the devisee, and " a fee in the executors, with directions to convey to the heir or the devisee, upon the falling in of the life estate."

Exceptions were filed to this report on behalf of the executors, and sustained upon argument by the Orphans' Court.

The auditor then filed a supplemental report, under the directions of the court, to which the following exceptions were filed on behalf of the present appellant:—

1. In reporting that the devise to Sarah Devitt, now Mrs. Edwards, in the will of the said William A. Edwards, created an estate tail, or an estate in fee in the devisee.

2. In reporting that the will, as to the after-born child of the testator, is revoked, and that the testator, as to such child, must be regarded as having died intestate.

3. In reporting that the exceptant is entitled to one third part of the personal estate of the testator, absolutely, and to one third part of the real estate for the term of her life.

4. In reporting that the guardian of the testator's minor son will be entitled to two-thirds of the income of the real estate during the life of the widow, and the minority of the ward.

5. In reporting that the minor child of the testator will be entitled to receive by his guardian the sum of $9333⅓, and the exceptant $4666⅔.

These exceptions were overruled by the court, and the report absolutely confirmed; whereupon this appeal was taken.

*Joseph A. Clay* and *Henry Wharton*, for appellant, argued—

I. That the will of deceased was not revoked by the subsequent marriage and birth of issue, if the issue were in fact provided for.

II. That the trust created by the will did in fact make such a provision, by virtue of the trust to convey to the heirs of the body; and that this trust did not create an estate tail in the appellant—1. Because she took no freehold interest in the estate. 2. Because the words "heirs of the body," were not used by the testator as technical words. 3. Because this is an executory trust.

That the law on the subject of the revocation of wills, both in the ecclesiastical and common law courts, proceeded upon the hypothesis that a testamentary disposition holds good only so long as the essential condition under which it was made remains the same, and on that of supplying an unexpressed intention: 1 Jarman on Wills 109; Brown *v.* Thompson, 1 Eq. Cas. Abr. 413; Kenebel *v.* Scraften, 2 East 530; Walker *v.* Hall, 10 Casey 486.

That the statutes of Pennsylvania of 1748, 1764, 1794, and 1833, were intended only to remedy defects in the common law rule, not to change its basis or reasons. At common law, the revocation only took place on the occurrence of both marriage and the birth of a child; our statutes provide for either case. When they were first passed, also, it was strongly debated whether the will extended to a posthumous child; this they also

guard against.  Under these statutes it is held that marriage or the birth of a subsequent child is only a revocation *pro tanto*, and does not affect the will itself, *e. g.*, as to the appointment of executors, the gift to them of a power to sell or the like : Coates *v.* Hughes, 3 Binn. 498; McKnight *v.* Read, 1 Whart. 213; Walker *v.* Hall, 10 Casey 483; Young's Appeal, 3 Wright 118.

The Act of 1833 only applies to cases when the after-born children are not provided for.  This is substantially the same as the common law rule.  We may therefore assume that the decisions at common law so far still apply, and that in this state a provision for future children will prevent the revocation of a will, though made before marriage.

In the present case the testator plainly intended to make such a provision which alone would be sufficient, though it should be defeated by the operation of a technical rule of law, or by some external cause, as in the case of a devise of land, the title to which failed, or the gift of stock in a corporation which afterwards became insolvent.  But it is sufficient to show that the provision is an effectual one, so that on the death of the appellant, her son will take the estate absolutely, and as a purchaser.

It will be argued on the other side, that the provisions of the will gave to the appellant, under the rule in Shelley's Case, an estate tail, which, by force of the Act of 1855, became a fee simple.  If this were so, the case of Brown *v.* Thompson, 1 Eq. Cas. Abr. 413, if law, would still apply.  But the appellant submits that the rule in Shelley's Case does not here apply.

I. The intention to give her only a life interest is express, and that interest is qualified in a peculiar way.  The trust is not for her use, or even to pay over the rents, issues, and profits to her generally, which would doubtless give her an equitable life estate.  It is only, if the executors think proper to sell and pay over the income of the proceeds of sale.  It is true, that the testator expresses his desire that the estate should be made to yield an income immediately after his death; but he still does not deprive his executors of the discretion as to the time of sale, and even the propriety of selling at all.  Until a sale, therefore, the appellant has no equitable right whatever.  She has no right to the land itself, and not even the power of applying to a court of equity to compel a sale.  Hence, her interest is only in the nature of a charge on the estate, the amount of which is to be measured by the discretion of the executors.  She has no freehold estate, legal or equitable, within the meaning of the rule in Shelley's Case.

II. The testator did not use the words "heirs of the body," in their technical sense, as words of limitation.

1. "If she shall die leaving issue," the executors are to convey, &c.  These first words are superfluous, if the words

"heirs of the body" are a mere continuation of the previous limitation.   On the other hand, if the testator meant the "heirs of the body" to take as purchasers, the words "if, &c." are technically appropriate to introduce a contingent remainder.

2.  The previous words "die leaving issue," coupled with the direction to convey, show that "issue living at her death" was meant, that is, a specific class of then existing persons, viz., children.   Therefore it would seem that the words "heirs of the body" are to be taken *primâ facie* in the same sense, and not as denoting a series to take in succession.   This is made more plain by the fact, that the executors are to convey to "the heirs of the body," share and share alike.   Now though "heirs of the body" is a technical word of limitation, it may be, and often is popularly used as synonymous with "children" or "issue."   In the present case there is sufficient to show that the testator so used it.   If so, of course the rule in Shelley's Case does not apply.

III.  Taking all the limitations together, it is submitted that this is an executory trust, to which the rule in Shelley's Case does not apply.  The whole matter is left in the discretion of the executors.  See American Notes to Glenorchy *v.* Bosville, 1 Lead. Cas. in Eq. 1, 77; Edmonson *v.* Dyson, 2 Kelly 307; Loving *v.* Hunter, 8 Yerg. 4; Porter *v.* Doby, 2 Rich. Eq. 49.

Since the Act of 1855, converting estates tail into fee simple, the courts should not be too rigid in construing doubtful words into estates tail.   Except so far as decided cases go, the rules which are applied on this subject to personalty ought now to be adopted.   These rules were expressly based on this, that an estate tail in personalty amounts to an absolute interest, and therefore the intention of testators would be wholly defeated by the adoption of the stricter doctrines applied to real estate.  Therefore, whenever it is possible, the English courts, in doubtful cases, lean to convert bequests to issue, after a life estate, into remainders.   See Knight *v.* Ellis, 2 Brown's Ch. C. 570; Stoner *v.* Curwen, 5 Sim. 264; Wynch's Trust, 27 Eng. L. & Eq. 375; 5 De G. Macn. & G. 188.   The same reasons now applying to real estate, it deserves consideration whether it would not be better to secure uniformity of decision, as to both classes of property, by adopting, as far as possible, the rules as to personalty.

Even if the court should be of opinion that the will in this case was revoked by marriage and the birth of issue, the auditor has erred in reporting that the fund should be distributed as real estate.

The power of sale in the executors was a conversion from the death of the testator, as it was an absolute direction to sell, the time of sale only being left to their discretion: Parkinson's Appeal, 8 Casey 455.   This power was not revoked, as the marriage and birth of the child only amounted to a revocation

[Edwards's Appeal.]

*pro tanto*: Coates *v.* Hughes, 3 Binn. 498; McKnight *v.* Read, 1 Whart. 213.

This being so, the widow would be entitled to one-third of the fund absolutely as personal estate, not merely to the income during her life.

*Henry M. Phillips*, for appellees.—The 15th section of the Act of April 8th 1833, is a wise law. It must be administered for the purposes for which it was made; and the safest rule of construction of a will, executed before marriage or birth of issue, is to judge it *ex visceribus suis*, and not to depend upon matters *dehors* the will, and thus defeat the important and recognised rule of certainty in testamentary transmission of property. Did the testator provide by his will for his child? The solution of this question must determine the case, and it ought to be ascertained by a perusal of the will itself. It certainly provided for the lady, not then his wife, but who subsequently became so, and if this be not a fee tail, and, by the Act of April 27th 1855, a fee simple, he did provide for her children; but the coincidence that the issue was his cannot change the testamentary direction. No better answer to the assumption of the appellants need be given, than the fact that if she shall have more children, all will share under the will, because they are her children. This answers and defeats the argument that he meant his children, for if he meant his children, hers by another husband would not take, and this cannot be here plausibly pretended. Our decisions have been uniform in exacting that there must be a provision for a child, and not something that may stand as an equivalent.

The true ground of revocation is stated in Doe dem. Lancashire *v.* Lancashire, 5 Term Rep. 49, to be, that marriage and the birth of a child revokes a will by a tacit condition which the law annexes to the will, and not to a presumable change of intention: Sprague *v.* Stone, 1 Dougl. 35; 1 Powell on Devises 533. In this case parol evidence to rebut the implication was rejected.

In the case of Brown *v.* Thompson, 1 Eq. Cas. Abr., the will was held by the Master of the Rolls, Sir John Trevor, to be revoked; this decree was reversed by the Lord Keeper, Wright; but in Marston *v.* Roe d. Fox, argued before all the judges of England, with the exception of Lord Denman, C. J. Tindal delivering the opinion of the Court of Exchequer Chamber, the decision of the Lord Keeper was overthrown as any authority.

The will of a single woman, giving all her estate to her intended husband, was revoked by her subsequent marriage to him: Fransen's Will, 2 Casey 204, cited and approved in Walker *v.* Hall, 10 Id. 688. See also Jackson *v.* Jackson, 2 Barr 212.

The language of the Act of the 6th of February 1749, was, " or have a child, or children not named in any such will." This

act was repealed by the Act of the 23d of March 1764, which contained the words, " or have a child or children not provided for," and was substantially re-enacted by the 23d section of the Intestate Act of the 19th of April 1794, 3 Smith's Laws 152, using the words just quoted. Then came the Act of the 8th of April 1833, which declares in the same manner, "shall marry or have a child or children not provided for in such will," " every person, so far as shall regard the widow, or child or children after born, shall be deemed and construed to die intestate." Even if " her" heirs might be construed to mean " his," yet an estate tail was created.

It is submitted that the rule in Shelley's Case applies here.

The argument of the appellant about the construction of the words " if," " shall see proper," and " when," preceding and following the authority to the executors to sell and invest the proceeds, is the strongest argument to prove that no provision is made for *his* child. The natural reading of this will is, that the income of the property is to be enjoyed by Miss Devitt during her life. There is no discretion here. She shall enjoy the benefit of his estate, the will declares, and if his executors think proper to sell, he gives them ample power to do so, and invest the proceeds for the same uses and purposes. See Fearne 467; Butterfield *v.* Butterfield, 1 Ves. 133, 154; Train *v.* Fisher, 15 S. & R. 147; Potts's Appeal, 6 Casey 170.

The appellant suggests that this devise is not an estate tail, because it is apparent that the intention was to give a life interest to Miss Devitt. It is possible that such was the intent in this case; yet, perhaps no estate tail was ever created that did not manifest this same desire. The rule in Shelley's Case is an artificial one, and frequently subverts particular intentions; but at this day it requires no argument to support it: Allen *v.* Markle, 12 Casey 118; Hileman *v.* Bouslaugh, 1 Harris 344; Roe *v.* Bedford, 4 M. & S. 363.

The words " heirs of the body" are words of limitation. The words if " she die without issue," " if he have no issue," " if he die before he has any issue," " or in want or default of issue," are construed and declared to import a general indefinite failure of issue: 2 Jarman on Wills 418; Clark *v.* Baker, 3 S. & R. 470; Eichelberger *v.* Barnitz, 9 Watts 450; 4 Kent's Com. 273, 276; Vaughan *v.* Dickes, 8 Harris 513; George *v.* Morgan, Id. 95; Lapsley *v.* Lapsley, 9 Barr 130; Williams on Real Property 178; Langley *v.* Heald, 7 W. & S. 98; Crily *v.* Chamberlain, 6 Casey 167; Potts's Appeal, Id. 170; Middleswarth *v.* Collins, 1 Phila. Rep. 139; Kay *v.* Scates, 1 Wright 40.

If the remainder is to persons standing in the relation of general or special heirs of the tenant for life, the law presumes that they are to take as heirs, unless it unequivocally appears

[Edwards's Appeal].

that individuals, other than persons who are to take simply as heirs, are intended: Smith's Ex. Int., § 479; Fearne 188; Doe d. Burrin v. Charlton, 1 M. & G. 429; Jones v. Morgan, 1 Bro. C. C. 219.

The element of issue living at the death, was in the cases of Carter v. McMichael, 10 S. & R. 429, and Maurer v. Marshall, 4 Harris 377; and the devises were held entailments: Hileman v. Bouslaugh, 1 Harris 344; Allpass v. Watkins, 8 Term Rep. 518; Price v. Taylor, 4 Casey 95; Vaughan v. Dickes, 8 Harris 511; Hansell v. Hubbell, 12 Id. 244.

Criswell's Appeal, 5 Wright 288, declares the rule to be: 1. That when a testator used the word "heirs" in a devise of a remainder, the presumption is that he used it in its ordinary legal sense, as a word of limitation and not of purchase; 2. That this presumption cannot be overcome, unless it be so plain as to preclude misunderstanding, that the testator intended to deviate from the general rule; 3. That superfluous or inconsistent words or doctrine in a will, will not suffice to reduce the words "heirs," or "heirs of the body," to words of purchase. See also Angle v. Brosius, 7 Wright 189; Allen v. Markle, 12 Casey 118.

It is an inflexible rule, that no limitation shall be deemed an executory trust or devise, if it may be sustained as a remainder: Stehman v. Stehman, 1 Watts 475; Amelia Smith's Appeal, 11 Harris 11; Manderson v. Lukens, Id. 33; Williams v. Leech, 4 Casey 92. Where the will manifests two purposes, which are valid separately, but when taken together are inconsistent with each other, or with the legal principle, the law will give effect to the more general: Jackson v. Delancey, 13 Johns. 537; Malcolm v. Malcolm, 3 Cushing 472; Dart v. Dart, 7 Conn. 250; Duffield v. Duffield, 1 Dow. & Clark 311. It is submitted—

1. That no provision was made in the will for this child;

2. That the will gives an estate tail to Mrs. Edwards; and by force of the first section of the Act of the 27th of April 1855 (Br. Purdon 422), the estate became a fee simple; and

3. That the will is revoked, and that the appellant is entitled to one third part of the personal estate absolutely, and one-third of the realty during her life.

The opinion of the court was delivered, April 2d 1864, by

WOODWARD, C. J.—The 15th section of our Statute of Wills of 8th of April 1833, Purdon 1018, is in these words: "When any person shall make his last will and testament, and afterwards shall marry, or have a child or children not provided for in such will, and dies leaving a widow and child, or either a widow or child, or children, although such child or children be born after the death of their father, every such person, so far as shall regard the widow or child, or children after born, shall be deemed and

construed to die intestate, and such widow, child, or children, shall be entitled to such purparts, shares, and dividends of the estate, real and personal, of the deceased, as if he had actually died without any will."

William A. Edwards made his will on the 10th September 1856, devising his estate, real and personal, in trust for the benefit of his friend, Sarah Devitt, and the heirs of her body. On the 11th February 1858, he married Miss Devitt. On the 10th August 1860, he died, leaving his wife *enceinte.* On the 25th August 1860, a son was born, who is living.

Upon this state of facts it is safe and easy to say that the marriage revoked the will as to Mrs. Edwards. The revocation as to her did not depend on the *provision* made for her, it resulted absolutely as a legal consequence of the marriage. The statute annexes the condition of *provision* to the children, not the widow. As to "child or children *not provided for* in such will," it is revoked; but as to children who are provided for, it is not revoked by the marriage of the testator and birth of issue. The revocation as to the widow, I repeat, was absolute the instant of the marriage. It did not wait for her election, any more than it depended on the provision made for her. And a will revoked is as if it had never been made. The statute plainly declares this to be the effect of revocation; the testator shall be deemed and construed to die intestate, and his estate, so far as concerns the parties in behalf of whom the revocation occurs, is distributable " as if he had actually died without any will."

Partial revocations were recognised under our statute of 1794: Coates *v.* Hughes, 3 Binn. 498. Under the Act of 1833, the marriage of a female after making her will was held a revocation, in Fransen's Case, 2 Casey 204; and although Walker *v.* Hall, 10 Casey 483, was not a case of an ante-nuptial will, it was there laid down as settled law, that "if a man makes his will, and marries, and dies leaving a widow, so far as regards the widow he dies intestate, that is, his will is revoked *pro tanto,* and the widow has a third or half of the real estate during her life, and a third or half of the personal estate absolutely, according to circumstances." If this be the law of Edwards's will—if as to his wife he died intestate and without a will—what signifies the learned discussion we had as to the estate which the words of the will might have vested in her? These words were repealed after they were written, and as to the widow, they are as if they had never been written. She took neither an equitable nor a legal estate under the will—neither an estate in fee, in tail, nor for life—she took nothing except what the intestate laws gave her. But if *she* took nothing, how could the posthumous son take anything under the will? Whatever estate any construction of the will would give him, would be necessarily secondary to that of the mother, either a succession

or a remainder, dependent upon a prior estate in her. The court below held that she took an estate tail, which our Act of 1855 converted into a fee, and therefore that the son was unprovided for and that the will was revoked as to him. The inferences are very fair if the premises be granted; but it is impossible for us to see how she could take an estate tail at the death of her husband if his will was revoked as to her the instant he married her. And besides, we strongly incline to the opinion that the words of the will, if they were to have effect, would create a life estate in her, with a contingent remainder to the "heirs of her body," which, in connection with the prior words, "lawful issue," we would construe to mean children living at the time of her death. Then the question would arise whether a contingent remainder was such provision as the fifteenth section of our Statute of Wills contemplates, and we should probably conclude that it was not; for we believe the legislature meant a present vested interest, and not a future and contingent one.

But there can be no contingent remainder without a particular estate to support it; and if the mother took nothing under the will, by reason of the revocation, it would be idle to argue that the words were such as would create a life estate in her. Yet without a life estate in her there could be no contingent remainder; and if a contingent remainder, it was not the statutory provision. View it as we may, we cannot conjure up a doubt that the posthumous son of the testator is a child "*not provided for*" in the will within the meaning of the Act of Assembly, and therefore his birth was a revocation of the will as to him. Whether the will was wholly inoperative as to the mother, or whether it gave her an estate tail which the statute transmuted into a fee, or an estate for life with remainder in fee to the son, the above conclusion rests on solid ground, and is decisive of the cause. The will is revoked, both as to mother and son, but not necessarily as to the trustees: Coates *v.* Hughes, 3 Binn. 498.

We cannot accept the suggestion of counsel that the power of sale granted to the executors was a conversion which would entitle the widow to one-third of the fund absolutely as personal estate. Notwithstanding our Act of 24th February 1834, § 13 (Purdon 282), equitable conversion is still a question of intention, and does not result necessarily from a power of sale given to executors: Chew *v.* Nicklin, 9 Wright 84. We see no evidence of an intention to work a conversion here, and therefore distribution is to be made as in other cases of intestacy.

　　　　　　　　　　The decree is affirmed.