<hr />

# Newlin's Estate.

*Wills—Revocation—After-born child—Act of April 8, 1833, sec. 15, P. L.* 249.

The Act of April 8, 1833, sec. 15, P. L. 249, relating to the revocation of a will by the subsequent birth of a child, makes no requirement that the child shall be fully or adequately provided for. That is left to the discretion of the parent as in the case of living children. All that it does require is that he shall have the child in mind and shall make clear his intention that the will shall apply to it. Any provision which does that is sufficient and the inquiry whether large or small, equal or unequal, vested or contingent, present or future, is irrelevant and outside the jurisdiction of the courts except so far as it tends to throw light on the question of intention.

A gift by will to trustees to pay income to testator's wife " during the minority of my child or children, and during the period in which my wife shall remain unmarried after my death, and in further trust, to convey, assign, transfer, set over and pay to the trustees herein named the share of

each of my daughters upon reaching the age of twenty-one or upon my wife remarrying, in trust to keep the shares of my daughters invested," etc., is a sufficient provision for a daughter born after the date of the will.

Argued May 3, 1904. Appeal, No. 100, Jan. T., 1904, by Morris Wolf, guardian of Grace DeLancey Newlin, from decree of O. C. Delaware Co., dismissing exceptions to auditor's report in estate of DeLancey V. Newlin, deceased. Before MITCHELL, C. J., BROWN, MESTREZAT, POTTER and THOMPSON, JJ. Affirmed.

Exceptions to report of Isaac E. Johnson, Esq., auditor.

The auditor stated the facts to be as follows:

DeLancey V. Newlin, the testator, died on April 28, 1900, less than one month after the execution of his will and on May 31, 1900, a posthumous child, Grace DeLancey Newlin, was born. At the time of the execution of this will, DeLancey V. Newlin had no children, although he was expecting the birth of a child. The question which arises for the auditor's determination is whether the provisions in the will constituted a sufficient provision for a child born after the execution of a will to prevent intestacy as to such child in accordance with the Act of April 8, 1833, section 15, P. L. 249. This section reads as follows : " When any person shall make his last will and testament and afterwards shall marry or have a child or children not provided for in such will, and die, leaving a widow and child, or either a widow or child or children, although such child or children be born after the death of their father, every such person, so far as shall regard the widow or child or children after-born, shall be deemed and construed to die intestate and such widow, child or children shall be entitled to such purparts, shares and dividends of the estate, real and personal, of the deceased, as if he had actually died without any will."

The will of Mr. Newlin contained the following disposition of his property :

One third of the estate, real and personal, was devised and bequeathed to the Girard Trust Company and Arthur Newlin, in trust to pay the income " to my wife, Grace W. Newlin, during her life, and upon her death to such person or persons as by her last will and testament she may direct."

Another one third of the estate was devised to the same trus-

tees in trust for his wife as long as she should live and remain
unmarried; but, upon her death or remarriage, the trustees
were to pay over to the guardians of the minor children the in-
terest on their shares; and upon the sons attaining the age of
twenty-one, his or their share was to be turned over to him or
them absolutely, the words used in the will being " his or their
share of the principal of the within-named trust," but it was
provided that " upon the death of my said son or sons, or any
of them before reaching the age of twenty-one, then I direct
that his or their share or shares shall be paid and divided
amongst my said surviving children in equal portions, share and
share alike."   The same provision was made in the case of any
daughters, except that their shares of the estate were to con-
tinue in the hands of the trustees.

The residue of the estate was left to the trustees to pay the
income thereof to the testator's wife during the minority of the
child or children and " during the period of which my wife shall
remain unmarried after my death," but it provides that " upon
each of my sons reaching the age of twenty-one, the trustees
are to assign, transfer, set over and pay unto the same his share
of the principal of this one-third of my estate, absolutely in fee,
and upon the death of my said son or sons, or any of them, be-
fore reaching the age of twenty-one, then I direct that his or
their share or shares shall be paid and divided amongst my said
surviving children in equal portions, share and share alike,"
and similar provisions in this case as in the former were made
for the daughters, except that their share or shares were to con-
tinue in the hands of the trustees.

The auditor held that the will was not revoked by the birth
of the daughter.

Exceptions to the auditor's report were dismissed by the
court.

*Error assigned* was the decree of the court.

*Louis DeP. Vail*, for appellant.—The will made no provision
for the daughter : Hollingsworth's App., 51 Pa. 518 ; Walker
v. Hall, 34 Pa. 483 ; McKnight v. Read, 1 Wharton, 213 ; Ed-
wards's App., 47 Pa. 144 ; Willard's App., 68 Pa. 327 ; Donges's
Est., 103 Wis. 497 (79 N. W. Repr. 786).

*E. Wilbur Kriebel, George T. Butler, George Quintard Horwitz* and *John G. Johnson*, for appellee.—The interest of the posthumous child of DeLancey V. Newlin is vested and not contingent; and a vested remainder can be given to such a child as this testator's : Yost's Est., 134 Pa. 426 ; Blanchard v. Blanchard, 83 Mass. 223 ; McClure's App., 72 Pa. 414.

It is submitted that there are two tests which deny the right of a posthumous child to take against its parent's will.

1. If the provision made in the will for an after-born child be a legal interest and equal that made for other children in being at the time of the testator's death, then the posthumous child cannot take against the will, provided—

2. That the birth of the said child was contemplated by testator when he executed his will.

Courts of other jurisdictions, interpreting similar acts, have unanimously decided in favor of the appellee's contention: Bowen v. Hoxie, 137 Mass. 527 ; Minot's Petition, 164 Mass. 38 (41 N. E. Repr. 63) ; Donges's Estate, 103 Wis. 497 (79 N. W. Repr. 786).

OPINION BY MR. CHIEF JUSTICE MITCHELL, June 15, 1904 :

A portion of the learned auditor's report, and the burden of the appellant's argument here are devoted to the question whether the will of decedent made an adequate or sufficient provision for his unborn child, and incidentally, to the discussion of vested and contingent gifts, present or future possession or enjoyment, etc., as bearing on the question of adequacy. All such discussion was outside of the case. The statute makes no requirement of adequacy, and gives courts no authority over that subject. What it does require is that the testator shall make a provision, to wit: such provision as he deems proper, for the unborn child, and shall do it in such way as to show that he intends it as a provision. Beyond this the child unborn has no greater rights than the child or children living.

No decision of this court on this exact point has been brought to our attention, and the decisions in the lower courts, as well as some dicta here, are not altogether harmonious. The important ones of the latter will be noticed further on, but a brief historical survey of the subject will throw light on the path of the investigation.

By the custom of the province of York, "and divers places in this realm of England" says the earliest authority, Swinburne, a testator had only partial power of disposition over his personal property, if he had a wife or children. "Thou shalt understand that of that which remaineth" (after payment of debts) "sometimes the whole, sometimes the half and sometimes the third part may be bequeathed by the testator, according to the diversity of these cases following:" first, where he has neither wife nor child; second, a wife and no child, or child or children and no wife; and third, a wife and child or children. Swinburne on Testaments and Wills, part 3, sec. 16. Later writers among whom is Blackstone following Glanvil are of opinion that this restriction of testamentary power over personalty by saving to wife and children what was known as their "reasonable parts" was not by local custom but was really the law of the realm. "But this law is at present altered by imperceptible degrees, and the deceased may now by will bequeath the whole of his goods and chattels, though we cannot trace out when first this alteration began:" 2 Black. Com. 492. In regard to lands the restriction was greater and lasted till more recent times. Power to devise land was opposed to the feudal policy of nonalienation without the consent of the lord, and after the conquest whatever may have been the law before, "in general no will was permitted of lands till the reign of Henry the Eighth; and then only of a certain portion; for it was not till after the restoration that the power of devising real property became so universal as at present:" 2 Black. 12.

The statute of wills, 32 Henry 8, was a radical change in the policy of the law, and the early construction of it was loose. Blackstone gives a graphic picture of the evils that followed: 2 Com. 376. For remedy the statute of frauds and perjuries, 29 Chas. 2, c. 3, enacted that all devises of land should be in writing signed by the testator, and required almost as great formality, by burning, cancelling, tearing, etc., for the revocation of a will once made. See Roberts's Digest of Brit. Stat. 306. But notwithstanding the looseness of construction following the statute of wills, the policy of the English law under the rule of primogeniture, always leaned strongly against disherison of the heir, a principle which has been carried down to the present day in our own law upon the construction of wills.

The courts, therefore, even after the statute of frauds, practically wrote into its provisions an implied revocation of a will by such a great and entire alteration of the testator's circumstances and situation as arises from subsequent marriage and birth of issue.    In Doe dem. Lancashire v. Lancashire, 5 Term Rep. 49, it is said that the first express decision to that effect was in Christopher v. Christopher in 1771, and in the same case Lord KENYON said that the rule was borrowed by his predecessors with much hesitation from the civil law, and in resorting to that law to define the limits of the rule, he was careful to disclaim any intention to adopt its general doctrines upon testamentary acts.    It being admitted that under the decisions subsequent marriage and birth of a child would revoke a will, but that subsequent marriage or birth of a child, would not, the particular point in that case was whether marriage and the birth of a posthumous child was within the first rule, and it was held that the child must be considered as in esse during the father's lifetime and its birth made an implied revocation of the will.    Some differences of opinion have been expressed as to the ground on which the revocation is to be implied, but they are differences in form of expression rather than in substance for they all start with a presumed change in the testator's intention, from his changed situation and obligations, though whether the change is to be considered as one in actual intent, and therefore open to evidence, or is presumptio juris and irrebuttable, is a point on which opinions differ.    See the cases collected and reviewed in 1 Redfield on Wills, ch. 7, sec. 24, ed. 1876.    In our own case of Coates v. Hughes, 3 Binn. 498, the will gave the executor a power of sale of real estate which had been exercised and title passed to defendant, and the particular question raised was whether the testator's subsequent marriage and the birth of a child revoked the will altogether or pro tanto only, and it was held that by the law of Pennsylvania, the revocation was pro tanto only, and the power of sale under the will passed a good title.    The whole subject was very elaborately argued and considered, and in the opinion Chief Justice TILGHMAN said, " marriage and the birth of a child, both subsequent to the making of a man's will, are circumstances by which his situation is so completely altered, that it cannot reasonably be supposed he intended the will to

remain in force." And from that down through all our cases the presumed intention of the testator has been treated as the basis of the rule.

As already said there is no express decision on the general question of a requirement of adequacy in the provision for the after-born child and there are expressions looking both ways. Those particularly relied on by appellant as in his favor are found in Walker v. Hall, 34 Pa. 483; Edwards's Appeal, 47 Pa. 144; Hollingsworth's Appeal, 51 Pa. 518, and Willard's Estate, 68 Pa. 327.

In Walker v. Hall the testator left his entire estate to his wife, "having the utmost confidence in her integrity and believing that should a child be born to us she will do the utmost to rear it to the honor and glory of its parents." This was held not to be a provision for the child. In the opinion READ, J., lays much stress on the language of the act of 1748 that the will shall be revoked as to any child "not named" and the change in the acts of 1764 and 1833, to child "not provided for." He also dwells on the English rule under the Statute 1 Vict. ch. 26, that the presumption of testator's change of intention is statutory and imperative, and our act is the same. "This is a positive statutory enactment, which can neither be repelled by parol testimony outside of the will nor by any language used in the will raising a presumption that he did not intend to provide for such after-born child." On this last ground the case is very much shaken by Fidelity Co.'s Appeal, 121 Pa. 1, which will be referred to again. On the difference of phrase between the act of 1748 and the later acts, the change is better accounted for by the suggestion of SHARSWOOD, J., in Willard's Estate, 68 Pa. 327, that the child might be provided for by general words including other children, without being individually named. The case, however, was a close one and might well be sustained on the ground that the reference to a child was entirely contingent and speculative and did not indicate that there was any actual child in the testator's mind for whom he intended to provide. So far as it goes, however, the case leans to the view that the law contemplates a substantial provision into which the courts may look. In the same direction and even more in disregard of testator's actual intention is Hollingsworth's Appeal, 51 Pa. 518, in which the opin-

ion was also written by Judge READ and stated expressly as "ruled by Walker v. Hall."

Edwards's Appeal, 47 Pa. 144, presents no difficulty. The testator left his entire estate in trust to pay the income to his friend S. so long as she should live "either single or married, and if she shall die leaving lawful issue" then to the heirs of her body. Testator afterwards married S. and died leaving children by her. It was argued to sustain the will that the children were provided for as heirs of the body of S. but the court held that the marriage having revoked the will absolutely as to S. she took no estate under it which could go to the children as her heirs. The reasoning though perhaps technical is unanswerable, and the chief bearing of the case on the present is the express ruling that "the statute annexes the condition of provision to the children, not the widow."

The next case, and the one on which as the auditor reports the appellant put his chief trust, is Willard's Estate, 68 Pa. 327. But on its facts it presents no difficulty. Testator left the interest of a fund to his mother for life and after her death to his "children and heirs;" another fund to his wife for life; the residue of his estate to his "two little girls A. and L.," children by a former wife; and on the death of his wife the fund left for her to revert to testator's heirs at law. It was held that an after-born child was not provided for. It is quite clear that the child was not within the intention of the testator, being a stronger case in that respect than Walker v. Hall, for which that explanation has been suggested. The children that he mentioned as such were those in esse by a previous wife, and if the after-born child took at all he took under the remainder to testator's heirs at law, and therefore under the statute and not by any intended provision for him in the will: Kinney v. Glasgow, 53 Pa. 141. It is true that Judge SHARSWOOD fortifies his position by an argument that if the child took as heir with the other children he would take only a reversion which in Edwards's Appeal, Judge WOODWARD had gone out of his way to say would not be a present provision within the statute. But that this argument is only a make weight appears clearly from what is said by Judge SHARSWOOD in the same opinion, "The statute does not say fully nor equally provided for. It may be true that if it clearly appears by the terms of the will

that an after-born child was within the special intention of the
testator, if there was any provision, no matter how inadequate,
the words of the statute would be satisfied.   Where, however,
an immediate provision is made for children by name, who are
living at the date of the will, and the interests which the af-
ter-born child takes is a reversion, and by general words and
not by special description as an after-born child, it would be a
very strange construction to hold such a child to be provided
for."

Similar expressions occur throughout our reports, and while
the repugnance to disinheriting the heir, and the hardship of
some cases, have induced the courts to lean against doubtful
provisions, it appears to have been universally conceded that an
actual provision, clearly intended for the after-born child, will
satisfy the statute no matter how small the provision is.   No
case can be found to controvert this position, and this being
once conceded the conclusion is unavoidable that the only test
of what the statute requires is the intention of the testator.

In Fidelity Co.'s Appeal, 121 Pa. 1, it was held that the revo-
cation of a will by the subsequent marriage of the testator was
not absolute but only at the wife's option.   The actual decision
is not material to the present question, but the cases of Walker
v. Hall, 34 Pa. 483, and Edwards's Appeal, 47 Pa. 144, hereto-
fore cited and discussed, are distinguished in a way to throw
much doubt at least on the obiter expressions on which the
appellant relies.

In this condition of the decided cases we are at liberty to
consider the question on principle, and the moment we do that
all difficulty disappears.   As shown by the historical retrospect
of the development of testamentary power in England, the basis
of the rule as to revocation of wills by the subsequent marriage
and birth of children to the testator is the latter's implied inten-
tion as to his disposition of his property under such change of
circumstances.   This was the view taken by this court in Coates
v. Hughes, 3 Binn. 498, and no case has questioned it since.
The statute is founded on the same presumption that the un-
born child was not in contemplation of the testator when he
made his will, and that if it had been, he would have changed
the provisions.   It gave the unborn child no greater rights in
the parent's estate than the living children, but it did raise in

his favor a legal presumption that required a definite provision to overcome. It is like the Roman law from which the principle was borrowed, that if a child was passed over without mention, it was presumed that he had been omitted by accident, but if he had any legacy, however small, it was held to show that the omission was intentional, and no querela inofficiosi testamenti was allowed. "Hence probably," says Blackstone, "has arisen that groundless vulgar error of the necessity of leaving the heir a shilling in order to disinherit him effectually:" 2 Com. 503.

The statute as said by SHARSWOOD, J., in Willard's Estate, 68 Pa. 327, makes no requirement that the child shall be fully or equally provided for. That is left to the discretion of the parent as in case of his living children. All that it does require is that he shall have the child in mind and shall make clear his intention that the will shall apply to it. Any provision which does that is sufficient and the inquiry whether large or small, equal or unequal, vested or contingent, present or future, is irrelevant and outside the jurisdiction of the courts except so far as it tends to throw light on the question of intention. Any other doctrine would lead to the result that a child born the day before a will was made, might take absolutely nothing and yet be remediless, while a child born the day after the making of the will could not be barred from a legal share under the intestate law, without a provision which a court should pronounce adequate. The law makes no such unsubstantial and unwarranted distinction.

Decree affirmed.