## McKeehan and Swiler *versus* Wilson.

1. When the omission or insertion of words has left unexpressed or wrongly expressed what, from the whole tenor of the will, was the intention of the testator, the court will permit the will to be read as if the words had been inserted or omitted.

2. But this is to be done only when such intention is clear beyond a reasonable doubt, by the will itself, except in some cases of latent ambiguity.

3. The rule applies to a *defectively expressed* intent; if from the will the intent cannot be gathered, words cannot be supplied to disclose an *intent*.

4. The word "children" may include "grandchildren" where succession is evidently intended.

5. A devise was "to my beloved wife and my three children all the proceeds of my farm during her natural life, and my wife the privilege of living with the family in the dwelling-house as long as she does live." * * "If all my children should die before my wife, I allow my wife one half of my real estate, and the other half to be divided equally amongst the heirs of my sister, at the time being." *Held*, to be a life estate *per auter vie*, in the children, and in the wife for her own life, and a contingent fee by implication to the children conditional on their surviving their mother.

ERROR to the Court of Common Pleas of *Cumberland county*.

This was an amicable action of ejectment, commenced March 7th 1866, and case stated, in which Rachel Wilson, Prudence A. McCrum, Richard Crawford, Levi Nichols and wife, in her right, Thomas Gray and wife, in her right, were plaintiffs, and Robert M. McKeehan, executor, &c., of Ann Davidson, deceased, William Swiler, Christopher Sprout and wife, in her right, were defendants, for an undivided half of a tract of land, late the estate of William G. Davidson, deceased. Davidson, by his will, proved May 13th 1820, devised "To my wife and three children all the proceeds of my farm during her natural life, and my wife the privilege of living with the family in the dwelling-house as long as she does live."

After giving some personal goods, he directed, "If all my children should die before my wife, I allow my wife one half of my real estate, and the other half to be divided equally amongst the heirs of my sister, Ann Crawford, at the time being."

He also gave to his sister the privilege of building a small house and stable on his farm, and a quarter of an acre for a gar-

[McKeehan v. Wilson.]

den, and directed if his personal property should be insufficient to pay his debts, that some of his woodland should be sold.

At the date and probate of the will, the testator had three children, William G. Davidson, Prudence A. Davidson, and Mary Davidson.  Prudence A. was married to James Swiler, and died leaving three children, William, Christopher and Sarah E., married to Levi Sprout.  Ann Davidson, the widow of William Davidson, the testator, survived her three children, and died on the 18th day of February 1866, having made her will, by which she devised her estate to her executor, the said Robert M. Mc-Keehan, for the purposes therein mentioned.

Ann Crawford, the sister of the testator, William Davidson, died, leaving three children:' 1. Hunter, who died leaving three children, Edward, Luty Ann, married to Levi Nichols, and Cornelia, married to Thomas Gray; 2. Rachel, married to Thomas Wilson, who is since dead; and 3. Prudence A., married to Robert McCrum, who is also dead.

The court below (Graham, P. J.) was of opinion that "It is a joint devise, and the wife having survived the children, is entitled to the entire proceeds during her life.  The plaintiffs cannot, therefore, recover any part of the mesne profits accruing after the death of the last surviving child, and before the death of the wife.  But all the children having died before testator's wife, the plaintiffs, who are the heirs of Ann Crawford, the sister of testator, are entitled, under the provisions of the 'will, to the one undivided half part of the land in dispute;" and gave judgment for plaintiffs accordingly.

This was assigned for error by the defendants below, who took out this writ of error.

*W. M. Penrose*, for plaintiffs in error, cited Arnold *v.* Jack, 12 Harris 61; Auman *v.* Auman, 9 Id. 343; Frankenfield *v.* Gruver, 7 Barr 448; Jack *v.* Arnold, 1 Grant 405; Lentz *v.* Lentz, 2 Phila. R. 148; Findlay *v.* Riddle, 3 Binn. 149; Lynn *v.* Downes, 1 Yeates 518; Rewalt *v.* Ulrich, 11 Harris 388; Estate of Mary Biddle, 4 Casey 59; 2 Jarm. on Wills 742; Brownfield *v.* Brownfield, 8 Harris 59; 2 Powell on Dev. 6; Lantz *v.* Trusler, 1 Wright 485; Manderson *v.* Lukens, 11 Harris 31; Redfield on Wills 454, § 7; Abbott *v.* Middleton, 21 Beav. 143; 7 House of Lords Cases 68; 18 Beav. 65; Langston *v.* Pole, 1 Tamlyn 119; Langston *v.* Langston, 8 Blight 167; 2 Cl. & Fin. 194; Owen *v.* Smyth, 2 H. Bl. 594; Galley *v.* Barrington, 2 Bing. 387; Doe *v.* Taylor, 10 Q. B. 718; Evans *v.* Astley, 3 Burr. 1570; Clements *v.* Paske, 3 Doug. 384; Corinhaven *v.* Shulen, 2 Paige 122; Deakins *v.* Hollis, 7 Gill & Johns. 311; Pickering *v.* Langdon, 11 Maine 429; Geiger *v.* Brown, 4

McCord 418; Newton *v.* Griffith, 1 Harr. & Gill 111; Lynch *v.* Hill, 6 Mumf. 114; Ingraham *v.* Meade, 3 Wall., Jr.; Dickinson *v.* Lee, 4 Watts 82; 1 Roper on Leg. 69; Holmes *v.* Holmes, 2 Pick. 24; Blackler *v.* Webb, 2 P. Wms. 383; Cheeseman *v.* Wilt, 1 Yeates 413; Hallowell *v.* Phipps, 2 Wh. 376; Bowers *v.* Porter, 4 Pick. 198.

*F. Watts* and *A. B. Sharpe,* for defendants in error, cited Hay *v.* Coventry, 3 T. R. 83; Right *v.* Sidebotham, Doug. 730; Doe *v.* Wright, 8 T. R. 64; Abbotson *v.* Beckwith, Cas. Temp. Talb. 157; Compton *v.* Compton, 9 East 267; Roll. Rep. 369, pl. 23; Walker *v.* Tipping, 9 Hare 800; Mellish *v.* Tipping, 9 Id. 45; Hough *v.* Hough, 4 Rawle 363; Barnacle *v.* Nightingale, 14 Sim. 426; Redfield on Wills 459; Dickinson *v.* Lee, 4 Watts 83; Hallowell *v.* Phipps, 2 Wh. 376; 2 Vern. 107; Reeves *v.* Brymer, 4 Ves. 692; Barnitz's Appeal, 5 Barr 264; Pemberton *v.* Parke, 5 Binn. 609; Radcliffe *v.* Buckley, 10 Ves. 195; 3 Ves. & Bea. 57; 2 Fearne Rem. 270–278; Williams on Ex. 934–942; 4 Kent's Com. 273, 274; Denn *v.* Bagshaw, 6 T. R. 512; White *v.* Warner, Doug. 334, note 4; Ferguson *v.* Dunbar, 3 Bro. C. C. 469, in note Belt's Ed.; Calthorpe *v.* Gough, 3 Id. 395, note; Doe *v.* Brabant, 3 Id. 393; Holmes *v.* Cradock, 3 Ves. 317; Parsons *v.* Parsons, 5 Id. 578; Scott *v.* Chamberlayne, 3 Id. 302, 491; Grassick *v.* Drummond, 1 Sim. & Stu. 517; Coope *v.* Banning, Id. 534; Humberstone *v.* Stanton, 3 Ves. & Bea. 389.

The opinion of the court was delivered, June 25th 1866, by

THOMPSON, J.—It is a cardinal rule in the construction of wills, that the intention of the testator as developed by the will must control. If this were not true, the paper would not be the will of the decedent. It sometimes happens, however, that through ignorance or the mistake of the testator or drawer of a will, words are omitted or inserted which have left unexpressed, or wrongfully expressed, what clearly appears to have been the intention of the devisor from the whole tenor of the will, and which are necessary to carry it out. The rule in such cases is well settled that the courts will permit the will to be read as if the words omitted were inserted, and those wrongfully inserted omitted, and in the place or places where they were intended to have been inserted or omitted: Redfield on Wills 454, and authorities cited in note 1; see also Jarman on Wills 456. But the correction is only permissible when the intention to be helped is apparent beyond a reasonable doubt. The mind of the testator is to be developed, but this can only be, excepting in some cases of latent ambiguity, by the will itself. In truth, the rule applies as a general thing only to a defectively expressed intent; for if from the will the intent cannot be gathered, words cannot be supplied to disclose

an intent, for it may not have been the intent of the testator.  A very plain instance of supplying a word occurs in Pickering v. Langden, 22 Maine 425, where a bequest to a wife of certain articles " during natural," was held to create a life estate, the word " life" being clearly omitted by mistake.  In Abbott v. Middleton, 21 Beav. 143, the words " without leaving a child" were supplied, it appearing by the will that that was the obvious intention of the testator.  So in Langton v. Pole, 2 Moore & Payne 490, a testator, in passing over the *first* son of A., limited the estate to *second* and *other sons* in tail successively, and then to the first and other daughters in like manner.  The word " first" was supplied before the word *second*, occurring before son in the devise, and this was affirmed in the House of Lords, on the ground that from the face of the will it was manifestly an omission by the drawer of the will.  There are many such cases to be found : Jarman 414, cap. 17, and Redfield on Wills, p. 454, *et seq.* cap. 33.  In Well v. Hearing, Cro. Jac. 415, when this may be done is well expressed in a sentence :—" The intention being established *by the will*, the law should adjudge accordingly."

This doctrine is invoked by the plaintiffs in error, but the radical difficulty in its favorable application to their case is, that no other intention is apparent on the face of the will than that expressed.

The devising clauses noticed in this case are :—" I give and devise to my beloved wife and my three children all the proceeds of my farm during her natural life, and my wife the privilege of living with the family in the dwelling as long as she does live."

This is clearly a life estate *per auter vie* in the children and to her during her own life, and there is no difficulty here ; but after interjecting some bequests of minor importance, the testator returns to his real estate, and adds : " If all my children should die before my wife, I allow my wife one half of my real estate, and the other half to be divided equally amongst the heirs of my sister Ann Crawford, at the time being."

Here is a contingent remainder in fee to the children by implication, conditional upon their surviving their mother, and on failure, over to her and the heirs of their aunt.  In making this disposition, it is contended, but feebly, however, that children here meant grandchildren, or the idea of intended succession ; and unless it be so held the estate will necessarily go out of the line of descent intended.

This, however, is but a consequence of the devise over, and not evidence that the testator did not mean what he said.  He had no grandchildren when his will was made and when death overtook him, and he may not have thought of them, or, thinking of the possibility of such descendants, may have left it to his wife to provide for them, if any, out of her share at her death, and grate-

[McKeehan *v.* Wilson.]

ful and fraternal feelings towards his sister by devising the half to her. While "grandchildren" has often been construed to be within the class embraced by "children," it is where succession is evidently intended, and is the equivalent of issue. There is no room for such construction here to effectuate any apparent intention of the testator, and it cannot be asserted.

But it has been most earnestly insisted upon that there has been an accidental omission of the words "without leaving children," or their equivalent, after the word "die," in the second of the above-cited clauses, and then the provision would read, "If all my children should die before my wife *without leaving children* (or issue), I allow my wife," &c.

This would undoubtedly make out the plaintiff's case. But the difficulty is in finding any evidence that this was what the testator meant to do with his property. He certainly has not said so, and left no sign that he intended so. It would have been more consonant with what might be expected to result from the ordinary and natural impulse of the heart in favor of offspring; but this alone will not establish a bequest or devise in their favor, although it is an important consideration in developing intention oftentimes. The will is complete here, and expresses a clear intention to give the property to others, if his children all died within his wife's lifetime. Then the objects of his bounty are his wife and the heirs of his sister. Who knows whether, if the possibility of grandchildren had been mentioned to him, he would have made any change? Perhaps he thought his wife would provide sufficiently for them out of her portion; and perhaps, too, he had strong unknown motives for providing for his sister's children, whom he described as her heirs. But this is conjecture, and it would be conjecture only if we should conclude that the testator meant differently from what he said. The whole will has been looked through, as the Master of the Rolls, in Brotherton *v.* Bury, 18 Beav. 65, said should always be done, in order to discover the sense of the testator, and whether he or the drawer of the will did by mistake omit the words proposed to be supplied, and we find no signs whatever of it in the will. Expressing the natural and common sentiments in favor of grandchildren, we regret this, but cannot help it. We must not disturb the sanctity of wills because we could wish them otherwise than they are. *Sic voluit, sic dixit,* must control in a case like this.

We find no error in the record; and the judgment is affirmed.