## Willard's Estate.

| 68 | 327, |
|---|---|
| 136 | 43, |
| 68 | 327 |
| 182 | 360 |

| 68 | 327 |
|---|---|
| 209 | 462 |
| e209 | ¹463 |
| e209 | 465 |

| 68 | 327 |
|---|---|
| 32 SC | ¹602 |

| 68 | 327 |
|---|---|
| 37SC | 319 |

1. A testator gave a bequest to his mother for life, at her death "to revert to my children and heirs;" and to his wife real estate for life, at her death "to revert to my heirs at law share and share alike, to those heirs who shall be living or entitled to be represented in said estate." After his death a child was born. *Held*, that such child was not provided for by the will, within the 15th section of Wills Act of April 8th 1833.

2. A reversionary interest, whether vested or contingent, is not a provision for an after-born child within the statute.

3. "As to the residue of my estate, I want one-half secured to the benefit of my wife." *Held*, that this passed the personal estate to the wife absolutely and the real estate in fee.

4. "The residue" means whatever is not specifically given in whatever part of the will it may be found, unless the whole will shows it was not so intended.

5. An obscure will construed.

March 31st 1871.   Before Thompson, C. J., Read and Sharswood, JJ.   Williams, J., at Nisi Prius.

Appeals from the decree of the Orphans' Court of *Lycoming county*: Of January Term 1871, No. 365, 372. In the estate of W. W. Willard, deceased.

The decedent died on the 2d of September 1864, having made his will dated the 29th of August preceding, as follows:—

"Item First: I will the interest of three thousand dollars to my beloved mother, Clarissa Willard, of Williamsport, Lycoming county, Pennsylvania, during her natural life, to be paid to her in semi-annual payments of ninety dollars, on the first days of July and January in each year after my decease, and at the death of my mother this bequest to revert to my children and heirs.

"Item Second: As to the residue of my estate, I want one-half secured to the benefit of my beloved present wife, Catharine Emily Willard, and I also will to my beloved wife the whole of the house and lot in which we now reside, valuing the same at seven thousand dollars, to be hers during her natural lifetime. All the residue of my estate shall be for the benefit of my two little girls, Anna C. Willard and Lizzie P. Willard, for their use and benefit for them and their heirs forever.

"At the decease of my beloved wife this bequest of seven thousand dollars to revert to my heirs at law, share and share alike, to those heirs who shall be living, or entitled to be represented in said estate." * * *

The testator died leaving the said Catharine E. Willard *enceinte*, and two children, Anna C. Willard and Lizzie P. Willard, by a former wife. Anna C. died on the 24th of February 1865, unmarried, without issue and intestate. On the 25th of February 1865, the widow, Catharine E. Willard, gave birth to a son, called Waldo Wickham Willard.

B. C. Wickham was appointed guardian, &c., of Waldo Wickham

Willard, and J. W. Maynard was appointed guardian of Lizzie P. Willard.

The administrator d. b. n. of the testator having settled his account, O. H. Reighard, Esq., was appointed auditor to distribute the balance in his hands.

On the hearing before the auditor, on behalf of Lizzie P. Willard, evidence was offered to prove the situation of the testator's family, at the date of the will, the value and kind of his property, what he considered his estate worth, the testator's knowledge of his wife's situation, &c., to show what estates he intended should pass by his will. The evidence was heard under objection; but as it was not considered by the auditor or the court, it need not be stated.

The auditor reported : 1. That no provision had been made in the will for Waldo W. Willard, who was *in ventre sa mere* at its date and at the testator's death, and that as to him the testator died intestate : and 2. That Catharine E. Willard, widow of the testator, was entitled to half the residue of the estate absolutely, first deducting therefrom the house and lot valued in the will at $7000.

The Orphans' Court confirmed the auditor's report.

The widow and the guardian of Lizzie P. Willard appealed to the Supreme Court. Their assignments of error were to the decree of the Orphans' Court so far as it was against them respectively.

*B. S. Bentley, Jr.*, and *Bentley*, for J. W. Maynard, guardian of Lizzie P. Willard, appellant.—Where the gift is to children who shall be *living* at the time of testator's death, the rule is that a child *in ventre sa mere* is not to be considered *as living* at the death of the testator, and, therefore, not included. Yet the rule being adopted on a *presumed intention* of the testator, the presumption may be rebutted by other parts of the will, aided as it may be by the state of the property, and the situation of the family : Swift *v.* Duffield, 5 S. & R. 39.

As to the devise to the widow: It makes no difference in a devise to a feme covert whether she have a trustee or not: Wright *v.* Brown, 8 Wright 224; Sheets's Estate, 2 P. F. Smith 266. Where the will is evidently drawn by an unskilful man, the terms used shall receive their *popular* not their technical meaning: Harper *v.* Wilson, 2 A. K. Marsh.; Fetrow's Estate, 8 P. F. Smith 426; Coates's Appeal, 2 Barr 129; Pennock's Estate, 8 Harris 268; Horwitz *v.* Norris, 10 P. F. Smith 261. Evidence may be given to aid the construction : Letchworth's Appeal, 6 Casey 178; Torbert *v.* Twining, 1 Yeates 432; Iddings *v.* Iddings, 7 S. & R. 111; Yundt's Appeal, 1 Harris 575; Wallize *v.* Wallize, 5 P. F. Smith 243; Fonnereau *v.* Poyntz, 1 Brown Ch. R. 480 ; Evans *v.* Knorr, 4 Rawle 69.

[Willard's Appeal.]

*H. H. Cummin* and *H. C. Parsons*, for Catharine E. Willard, appellant, and B. C. Wickham, guardian of W. W. Willard, appellee.—"Secured to the benefit of" without restriction, when applied to personal property, creates an absolute estate: Hellman *v.* Hellman, 4 Rawle 450; Schriver *v.* Cobeau, 4 Watts 130; Garret *v.* Rex, 6 Id. 14; Silknitter's Appeal, 9 Wright 365. The heir cannot be disinherited, except by express devise or necessary implication: Bender *v.* Dietrick, 7 W. & S. 284.

The evidence was inadmissible to alter or to explain the will: Redfield on Wills, part 1, pp. 498, 539, 540, 544, 545; Roper on Legacies, vol. 1, pp. 222, 273, 407, 451; Torbert *v.* Twining, 1 Yeates 432; Iddings *v.* Iddings, 7 S. & R. 111; Yundt's Appeal, 1 Harris 581; Wallize *v.* Wallize, 5 P. F. Smith 242.

Under the Act of 2th of April 1833, sec. 15, Pamph L. 250, Purd. 1018, pl. 18, a child had after the making of the will must be provided for, or the testator dies intestate as to such child: Walker *v.* Hall, 10 Casey 483; Kenebel *v.* Scrafton, 2 East 575; McKnight *v.* Read, 1 Wharton 213; Hollingsworth's Appeal, 1 P. F. Smith 518; Edwards's Appeal, 11 Wright 153; Coates *v.* Hughes, 3 Binney 498; Fransen's Will, 2 Casey 203; Walker *v.* Hall, 10 Casey 483; Silknitter's Appeal, 9 Wright 366; Hellman *v.* Hellman, 4 Rawle 444; Schriver *v.* Cobeau, 4 Watts 130; Garret *v.* Rex, 6 Id. 14; Jauretche *v.* Proctor, 12 Wright 470; Train *v.* Fisher, 15 S. & R. 145; Amelia Smith's Appeal, 11 Harris 11.

The opinion of the court was delivered, May 8th 1871, by

SHARSWOOD, J.—In regard to the admissibility of the parol evidence of Henry F. Snyder, the scrivener who drew the will of William Waldo Willard, as to his understanding of what the testator intended, it would be in the teeth of every precedent, and a virtual repeal of the Act of Assembly, which requires all wills to be in writing: Iddings *v.* Iddings, 7 S. & R. 111; Asay *v.* Hoover, 5 Barr 21; Kelley *v.* Kelley, 1 Casey 460; Wallize *v.* Wallize, 5 P. F. Smith 242; Best *v.* Hammond, Id. 409; Aspden's Estate, 2 Wall. Jr. 438.

Three questions arise upon the construction of the will *ex visceribus*, the answers to which dispose of all the other assignments of error.

The first is, did the testator die intestate as to the interest of his after-born and posthumous son Waldo Wickham Willard? That depends, under the language of the 15th section of the Act of April 8th 1833, Pamph. L. 251, upon another question, whether the said after-born son was provided for in the will. The testator at the date of his will had two daughters, to whom by name he made an immediate devise and bequest of one-half of the residue

of his estate.   He had bequeathed to his mother the interest of $3000 for life—after her death to his children and their heirs. He leaves to his wife for life the house and lot on which he resided, valued at $7000; this bequest, at her death, to revert to his heirs at law, share and share alike, to those heirs who shall be living or entitled to be represented in said estate.   Had then the testator in these bequests made provision for a child or children who might thereafter be born?

It is earnestly contended, that as this child would certainly be entitled to his equal share of these reversionary interests, he cannot be said not to be provided for.   The statute does not say fully nor equally provided for.   It may be true, that if it clearly appears by the terms of the will that an after-born child was within the special intention of the testator, if there was any provision, no matter how inadequate, the words of the statute would be satisfied.   Where, however, an immediate provision is made for children by name, who are living at the date of the will, and the interest which the after-born child takes is a reversion and by general words and not by special description as an after-born child, it would be a very strained construction to hold such a child to be provided for.   The Act of February 4th 1748–9, 2 Miller's Laws 22, used the words "not named in any such will."   The present words " not provided for in any such will" were first introduced by the Act of March 23d 1764, Hall & Sellers 309, and have been continued in all subsequent acts.   It is probable that the intention of the alteration was twofold: first, that merely naming without providing for after-born children would not be sufficient, as was the case in Walker v. Hall, 10 Casey 483; and, secondly, if the after-born child would take with the other children under general words, without being specially named or described, such devise or bequest would be a provision.   Here, however, there was in effect no present provision whatever.   For all the purposes of education and support, and that for an indefinite period, this son is left entirely dependent upon his mother, unless, indeed, by a sale of his reversionary interest.   In Edwards's Appeal, 11 Wright 153, where there was a subsequent marriage and birth of a child, and there was devised to the lady who was afterwards married to the testator a life estate with a contingent remainder to her children, it was held that as the devise to the wife was revoked by the marriage, the remainder would fall with it; but Chief Justice Woodward remarked, that if this were not so, " then the question would arise whether a contingent remainder was such a provision as the 15th section of the Statute of Wills contemplates, and we should probably conclude that it was not; for we believe the legislature meant a present vested interest, and not a future and contingent one."   But how could even a vested reversionary

[Willard's Appeal.]

interest be a provision, unless by a present sale of such reversionary interest? A contingent interest could also be sold. An interest may be vested as in this case, although the period when it shall fall into possession is uncertain. Such an interest could not be sold for the maintenance and education of the minor, except at an enormous sacrifice. Yet what could an Orphans' Court do under such circumstances? Refuse to sell, and throw the child for maintenance and education on the public; or make a scanty provision for a short period by an immediate sacrifice of all his future estate. We hold, then, that a reversionary interest, whether vested or contingent, is not a provision for an after-born child within the words or spirit of the statute.

The second question which is presented is, whether the widow of the testator, Catharine Emily Willard, took an absolute estate in the personalty and a fee simple in the realty of the half part of the residue given and bequeathed to her. "As to the residue of my estate, I want one-half secured to the benefit of my beloved present wife, Catharine Emily Willard." As to the personalty, it can hardly be even doubted that these words pass to her the absolute interest, and as to the realty, the word "estate," which does not refer to the subject-matter, but to the interest which the testator had in it, would carry the fee according to all the authorities: French v. McIlhenny, 2 Binn. 20; Morrison v. Semple, 6 Id. 97; Cassell v. Cooke, 8 S. & R. 289; Campbell v. Carson, 12 Id. 56; Foster v. Stewart, 6 Harris 24; Schriver v. Meyer, 7 Id. 87; Wood v. Hills, Id. 513; but independently of that rule of construction, the 9th section of the Act of April 8th 1833, Pamph. L. 250, now provides "that all devises of real estate shall pass the whole estate of the testator in the premises devised, although there be no words of inheritance or perpetuity, unless it appear by a devise over, or by words of limitation or otherwise in the will, that the testator intended to devise a less estate." So far from there being any such contrary intention manifested in this instance, the other provisions of the will only tend to confirm the conclusion that the testator intended his wife to have the estate real and personal absolutely, and not for life. The devise of the house and lot on which he resided to his wife for life, and the devise over after her death, and the entire absence of any devise over of the residue, seem to put this question beyond the limits of even a reasonable doubt.

Thus far we agree with the conclusions of the learned court below upon the construction of this will, but after a very attentive consideration of the argument presented in the auditor's report and by the able counsel in their printed argument, we have not been able to concur in the judgment upon the third question, which is, whether the house and lot specifically devised to the widow for her lifetime, is to be considered as a part of and in-

cluded in the previous bequest to her of one-half of the residue of the estate. There is, it must be confessed, considerable difficulty in ascertaining what the testator did mean, and it is highly probable that his real intention has been obscured by the arrangement of the will, which may have been the work of the scrivener. Certainly the natural construction of the words, "and I also will to my beloved present wife the whole of the house and lot in which we now reside," is, that this gift was in addition to what had been before given. But the difficulty is to explain and reconcile with this construction the fact that this gift is made to her at a valuation, and that not the house and lot but this valuation in money is given over as if it had been a pecuniary legacy upon the decease of the wife. The learned auditor argues that the whole estate of the testator is converted into personalty; that at the death of the wife the house and lot are to be sold, and $7000 of the proceeds are devised over, and that the residue must be the wife's. At least this is my understanding of the argument. It may have been really the intention of the testator, but I cannot see that he has used language to express it. It appears to me that this is all an ingenious conjecture for the purpose of reconciling and explaining what appears to be an incongruous declaration. Suppose, on the sale of the house and lot, upon the death of the wife, it does not fetch $7000, is it to be made up from the wife's moiety of the residuary estate? The argument, to be consistent, requires it. Obscurity often arises in the construction of a will from the improper collocation of its different members or parts. "The residue" of a man's estate, in testamentary language, means whatever is not specifically devised or bequeathed, and in whatever part of a will it may happen to be found it ought to have that meaning, unless the whole will taken together shows clearly that it was not so intended. A will bequeathing the residue of personalty passes everything not otherwise effectually disposed of: Bouvier's Dict., *Residue.* If a man were to begin his will with a bequest or devise of all his residuary estate, and then proceed to make various bequests and devises, it would not vary the proper construction of either. Now let us put this will in the natural and proper order of the items. First, I give $3000 to my mother for life—on her death to my children. Second, I give to my wife for life my house and lot, valued at $7000; upon her death this bequest of $7000 to my heirs at law. Lastly, as to the residue of my estate, I give one-half to my wife, and the other half to my daughters. Would any doubt remain as to its proper construction in this the natural order of its parts? Besides, is it not clear, as has been already shown, that the gift of the half of the residue to the wife was in fee or absolutely? There is nothing in the will to contradict this idea. But if the house and lot is to be regarded as a part of the moiety of the residue given to the

[Willard's Appeal.]

wife, a very considerable part of the residue is not devised to her absolutely. The natural construction of the words as well as that which would result from the natural arrangement of the several gifts and bequests, gives her the absolute interest in the moiety of the entire residue, after deducting thereout the house and lot devised to her for life. There is nothing unusual or unreasonable in this. The testator meant that his widow should continue to reside in his dwelling-house, and that she should have the means to enable her to do so. It may be that the valuation was an act of mere caprice, or that he intended on the death of his wife the full value of the house and lot should fall into the residue, to be divided between his wife and daughters, subject to a bequest of $7000 to his heirs at law. It is unnecessary to decide any question in advance of its actually arising. Sufficient unto the day is the evil thereof. We hold, then, that the devise of the house and lot to Catharine E. Willard for life is in addition to and not a part of the half of the residue of the estate given and bequeathed to her in fee.

This litigation has grown out of the obscurity of the will, and has been rendered necessary by it. It is proper, therefore, that the costs of all the parties should be borne by the estate.

Decree reversed and record remitted, that the proper decree may be entered in the court below conformably to this opinion; the costs of all parties below and in this court to be paid out of the estate.