## Shaw's Estate.

Argued January 11, 1937. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Palmer Watson,* with him *Geary & Rankin,* for appellant, No. 34.

*Edward H. Bryant, Jr.,* with him *Harold L. Ervin,* of *Lutz, Ervin, Reeser & Fronefield,* for appellant, No. 42.

*J. DeHaven Ledward,* for appellee.

OPINION BY MR. JUSTICE BARNES, April 12, 1937:

William H. Shaw died testate on January 15, 1900. We are called upon in this appeal to determine the construction of that portion of his will whereby he created a trust of $50,000 for the benefit of his family, the principal of which is now ripe for distribution. The provision of the will in question reads as follows:

"Item: I give and bequeath to the Delaware County Trust, Safe Deposit and Title Insurance Company the sum of Fifty Thousand Dollars in trust to manage and invest and pay the clear income thereof to my said wife and two sons in equal shares, and so that neither the principal nor the income shall be liable for any of their debts, contracts or engagements, and the said income shall not be liable to anticipation or alienation. At the death of my said wife, my two sons shall be entitled to the whole of the said income. Upon the death of either of my said sons without children surviving him, his share shall go to the survivor. Upon the death of either of my said sons leaving children surviving his share in the principal of said trust fund shall vest in such children absolutely.

"If both of my said sons shall die without leaving children to survive them, then the principal of said

trust fund shall be paid to my next of kin, according to law.

"Item: All the residue of my estate, real and personal, I give, devise and bequeath to my said wife for life and at her death to my two sons absolutely."

The testator was survived by his wife, Elizabeth J. Shaw, and two sons, Hugh W. Shaw and Charles K. Shaw. The two sons were minors and unmarried at the time the will was executed, and when testator died. Hugh W. Shaw predeceased his mother. He died February 28, 1910, survived by his wife, Bessie B. Shaw, whom he named in his will as the executrix of his estate. He left no children surviving.

Elizabeth J. Shaw, widow of testator, died February 27, 1916. Charles K. Shaw died October 26, 1935, leaving to survive him a minor daughter, Elizabeth Jane Shaw, whose guardian is the Girard Trust Company. He was also survived by his wife, Elsie Brinton Shaw, who is the executrix of his estate and sole beneficiary under his will. Following the death of Elizabeth J. Shaw, widow of testator, the entire income from the trust was paid to the surviving son, Charles K. Shaw, during his lifetime.

At the audit of the fourth and final account of the Delaware County Trust Company, successor to the trustee named in the will, the Girard Trust Company, as guardian of Elizabeth Jane Shaw, claimed the entire principal of the trust, contending that the title to the fund vested in her upon the death of her father, Charles K. Shaw. The executrix of the estate of Charles K. Shaw claimed one-half of the fund upon the theory that said proportion of the corpus vested in her husband upon the death of his brother, Hugh W. Shaw, and that nothing has divested it. The executrix of the estate of Hugh W. Shaw claimed one-half of the fund upon the ground that such share of the principal had vested in her husband upon the death of testator.

The learned court below decided that the two sons had a vested interest in the trust, subject to divestment if either died leaving children; that as Hugh W. Shaw died childless, his one-half share of principal was not divested and passed to his estate. It awarded a one-half share of the principal to Bessie B. Shaw as the executrix of his estate. The remaining half of the corpus was awarded to the Girard Trust Company as guardian of Elizabeth Jane Shaw.

Exceptions to the adjudication were dismissed and final decree for distribution entered. The guardian of Elizabeth Jane Shaw, and Elsie Brinton Shaw, executrix of the Charles K. Shaw estate, have taken these appeals from the decree so entered.

No question arose under the terms of this testamentary trust while the beneficiaries were living. There can be no doubt that the testator in the first part of the trust provisions of the will had in contemplation nothing beyond a gift of the income of the fund. He had three dependents, his wife and his two minor sons. His principal concern was to arrange for their maintenance after his death. To provide them with an adequate income he created the trust in question, and, to render that income secure, the payment thereof was protected by the usual spendthrift provisions. The trust by its terms provides that the income therefrom should be paid to his wife and two sons in equal shares, and that upon the death of his wife it was to be divided between his two sons. However, Hugh W. Shaw, one of the sons, predeceased his mother, and following his death she and the surviving son shared the income of the trust. It is conceded by all the parties to this proceeding that the entire income of the trust was, upon the death of the testator's widow, properly payable to Charles K. Shaw.

When the testator next provided that "upon the death of either of my said sons without children surviving him, *his share* shall go to the survivor," he was still disposing of income, and the words "his share" as used in

this provision can mean only that the deceased son's share of income, if he died childless, should go to the surviving son. The deceased son, during his lifetime, was entitled to income only, and income alone was disposed of by the testator thus far in the provisions creating the trust.

After disposing of the income of the estate, the testator made in the next provision of the trust his first reference to the distribution of the principal. He directed that "upon the death of either of my said sons leaving children surviving *his share in the principal* of the said trust fund shall vest in such children absolutely." This provision recognizes that each son possessed, according to the manifest intention of the testator, only a share in the principal of the trust fund, and at the same time it limited the principal which the children of a deceased son might inherit to "his share," that is, the share of the father of the children. The court below, in reference to this provision said: "The testator used the possessive pronoun 'his.' It was not all the principal of the trust which went to the children of a son, but only the share of the son dying, leaving children. If the testator had meant that all of the principal of the trust fund was to go to the children of a son, he would certainly have said so. He provided, however, that only 'his,' or really one-half of the principal, was to go to the children of a son dying leaving children."

The final provision of the trust is the only one which, in express terms, disposes of the entire principal of the fund. It says: "If both of my said sons shall die without leaving children to survive them, then the principal of said trust fund shall be paid to my next of kin, according to law." It is principally upon this provision that the guardian relies. It contends that, since both of the sons did not die without leaving children (that is, one son was survived by a child), by implication of law there is a gift of the entire principal to the child of Charles K. Shaw. In other words, the position of the

guardian is that if either of testator's sons had children, the principal was to vest in them; if neither had children, then it was to vest in his next of kin.

It is apparent that the testator by the terms of the trust which we have reviewed, provided for the distribution of principal (a) in the event of the death of his sons leaving children, and (b) in the event of the death of his sons without leaving children to survive them. However, he overlooked the very contingency which has arisen, i. e., that one son should die without children, and the other son should die with a child surviving him. In such a situation we must examine the will from its four corners to gain all the light possible upon the meaning of the dispositive language used by the testator. A will is its own best interpreter and here we find the testator included a residuary clause in the will which provides for the distribution of the principal in the case of a son dying without children. He says: "All the residue of my estate . . . I give, devise and bequeath to my said wife for life, and at her death to my two sons absolutely." Seeking the testamentary intent, we are justified here in reading this residuary clause in connection with the clauses of the trust, and to give weight to the fact that the testator gave the residue of his estate, subject to their mother's life estate, to the two sons absolutely.

We have carefully considered the contentions of counsel which were ably presented, and are fully aware that the question of interpretation in a case such as this one is not free from doubt. However, we have reached the conclusion that the principal of the trust vested absolutely in the two sons upon the death of testator, subject to the life estate of their mother, and further subject, as to each son, that his share be divested should he die leaving children surviving him. The life estate of the mother has ended. As Charles K. Shaw was survived by Elizabeth Jane Shaw, his one-half share of the principal was properly awarded by the court below to the Girard

Trust Company as her guardian. Hugh W. Shaw having died without children surviving, the remaining half share of the principal which likewise had vested in him was not divested, and therefore belongs to his estate as awarded by the court below.

While the decisions of this Court in cases involving the construction of wills are not necessarily controlling in the present case, because of variation in language and in the testator's family circumstances, the construction which we have adopted in this case is supported by our decisions in other cases. This Court has many times said that the law favors the vesting of legacies as soon as possible, and a legacy will always be regarded as vested rather than contingent unless it clearly appears that the testator had a different intention. Hence, unless it is apparent from the language of the will and the circumstances of the testator that the estate created is contingent rather than vested, a remainder will be held to vest as of the time of the death of the testator rather than at the expiration of the life tenancy: *Bache's Estate*, 246 Pa. 276; *Tatham's Estate*, 250 Pa. 269; *Neel's Estate*, 252 Pa. 394; *Weir's Estate*, 307 Pa. 461; *McGlinn's Estate*, 320 Pa. 389. Applying this principle to the present case there can be no doubt that the shares of principal vested in the two sons at the time of testator's decease.

The effect given to the provisions of the residuary clause of the will upon the share of principal vested in Hugh W. Shaw finds support in the decision of Mr. Justice SHARSWOOD in *Willard's Appeal*, 68 Pa. 327, 332. He said: "The residue of a man's estate, in testamentary language, means whatever is not specifically devised or bequeathed, and in whatever part of a will it may happen to be found it ought to have that meaning, unless the whole will taken together shows clearly that it was not so intended. A will bequeathing the residue of personalty passes everything *not otherwise effectually disposed of.*" These words have been repeated with ap-

proval in *Pittman's Estate*, 182 Pa. 355, 360, and in *Hoyt's Estate*, 236 Pa. 433, 441. As we have pointed out, we cannot disregard the provisions of the residuary clause in construing the provisions of this trust.

For the reasons stated above, the decree of the court below is affirmed. Costs to be paid by the estate.