## German Estate

*Harold A. Butz*, for accountant.

*Charles M. Bolich*, for nieces and nephews.

GEARHART, P. J., October 4, 1951.—Oliver H. German died November 8, 1933, leaving a will dated October 3, 1932. He left an incompetent widow and one son, Guy O. J. German. His widow, through her guardian and by order of court, elected to take against decedent's will, thereby receiving one half of the net estate. In his will testator ordered the conversion of his estate into cash and then set up a trust fund with the proceeds, directing that one third of the income should be expended for the maintenance of his wife for life, one third for his brother, Irwin, for life, and one third for his sister, Daisy Kohler, for life. He directed that the fund remain intact until the death of the last survivor, which has occurred.

He disposed of the trust fund in these words:

". . . the aforesaid trust fund as to its principal and accrued interest at that time, shall be distributed by the said institution in equal shares among my nieces and nephews or other heirs-at-law in accordance with the provisions of the intestate laws of the State of Pennsylvania."

In item 2 of his will testator provided:

"My son, Guy O. J. German, having during my life time, received considerable money and other gifts from me, shall be paid by my Executor the sum of Fifty ($50.00) Dollars, which said sum I hereby bequeath to him."

The question has been raised as to who are the parties entitled to the trust fund under the will of testator. Most of the trouble arises from the use of the word "other" as used in the phrase "or *other* heirs-at- law", etc., the question being, did testator use the words "other heirs" as referring to other heirs of the nephews and nieces, or did he mean other heirs of himself. If he meant the latter, the son to whom he had earlier in the will given fifty dollars, might conceivably take the whole estate under the intestate laws of the State of Pennsylvania, to the exclusion of the nephews and nieces.

Our duty is the ascertainment of the intent of testator. This must be gathered from the language of his will, and when the meaning is doubtful as applied to a specific gift, the intent will be sought by considering all the circumstances which surrounded testator when he wrote his will and by which he was probably influenced: Crozer's Estate, 257 Pa. 241, 243; Patterson's Estate, 333 Pa. 92, 94; Clarke Estate, 359 Pa. 411.

The intent of testator when determined from the will must control, and this will determine any uncertainty arising from the use of ambiguous language in any particular part of the will: Clarke Estate, supra, 411, 418; Keefer Estate, 353 Pa. 281, 283. And a will must be read in the ordinary and grammatical sense of the word employed unless some repugnance or inconsistency with the declared intention of testator as extracted from the whole will should follow from such reading: Riegel et al. v. Oliver et al., 352 Pa. 244;

Fidelity-Philadelphia Trust Co. v. Klinger, 162 Pa. Superior Ct. 294, 296.

The nephews and nieces being three in number (Fred H. German, another nephew, died in 1945 leaving a widow and an alleged adopted son), contend that the use of the word "other" is inconsistent with the intent of testator as expressed in paragraph 2 where he gives his son $50, and that if it be accepted in its literal meaning, the whole sense of the paragraph clearly expressed, viz., that the nephews and nieces should take the fund after the death of the last life tenant, would amount to a nullity and be of no effect.

In order to show the circumstances surrounding testator at the time the will was written, Sen. Henry L. Snyder was called to testify. Senator Snyder was the scrivener of the will. He stated that at the time testator was engaged in bitter litigation with his son, Guy, and hence gave him but $50. As to the word "other", the lawyer stated with obvious embarrassment that he was positive that he did not use that word, and that it was a typographical error, and that the word was "their". Said the witness: ". . . had those words been dictated by me they would have of necessity required further discussion". The stenographer who took the dictation is dead, but an experienced stenographer who worked with the deceased stenographer and who is acquainted with the system of shorthand practiced by the latter, explained that the symbols for the word "their" and for the word "other" are almost identical and could be readily interchanged, and that experienced stenographers sometimes rely on the context to decide which symbol was used. In short, the nephews and nieces argue that the word "other" should be read "their".

While courts are loathe to substitute one word for another, it sometimes is permitted where not to do so would defeat the clearly expressed intention of testa-

tor as gathered from the whole will and the surrounding circumstances at the time the will was written: McKeehan v. Wilson, 53 Pa. 74, 76. In In re Fox Estate, 222 Pa. 108, it was held that one word could be substituted for another where distribution according to the word used would be inconsistent with the general scheme of the will. On this principle a substitution of words was permitted in the following cases in order to carry out the general intent of testator: Riegel et al. v. Oliver et al., supra, 244; Galli's Estate, 340 Pa. 561; Hemphill's Estate, 345 Pa. 451.

Accordingly, in order to effectuate a distribution consistent with the intent of testator as found from the whole will, we substitute the word "their" for the word "other" as contended for by the nephews and nieces. Even without this substitution, if we had to decide the question on the use of the word "other", we would rule that the expression "or other heirs-at-law in accordance with the provisions of the intestate laws of the State of Pennsylvania" referred to other heirs of nephews and nieces who had predeceased the life tenants. To hold otherwise would fly in the face of the intent of testator as expressed in paragraph 2 and the paragraph under discussion. It is inconceivable that testator intended that his nephews and nieces should get nothing: Hildebrant's Estate, 268 Pa. 132. An obvious mistake must not be permitted to defeat the otherwise clearly expressed intention of testator, nor can words of ambiguous meaning overcome the intentions of testator as expressed clearly in other parts of the will: McKeehan v. Wilson, supra, 76.

That testator did not intend his son, Guy, to be embraced in the reference "other heirs" can be gathered from the fact that throughout the will he is referred to as "son" and not "heir". Likewise, testator uses the plural "heirs". This could hardly refer to the only son who testator presumably knew would, as such, take the

entire estate under the intestate laws. This is especially so when it is remembered that a skillful lawyer drew the will. Again, testator uses the expression "distributed . . . among" which would seem to exclude the son, for grammatically speaking the fund could not be divided among one person.

The nephews and nieces also contend, inconsistent so it seems to the writer, that only those nephews and nieces who survive the life tenant should share in the fund. That is to say, under their theory the share of Fred H. German, a nephew who died in 1945, inures to the benefit of the three living nephews and nieces.

This interpretation entirely disregards the words "or their heirs-at-law", etc. These words cannot be ignored, and if they mean anything, they mean that if a nephew or niece dies, his share shall inure to his or her heirs-at-law. The use of the word "or" in Bender v. Bender, 226 Pa. 607, was held to imply a substitutionary gift. And in Gilmor's Estate, 154 Pa. 523, the words "or to their heirs" were held to be words of substitution. And in this case the substitutionary gift is in favor of the heirs of Fred H. German.

The contention of the living nephews and nieces is that the vesting of this estate was postponed until the death of the last life tenant; that the legatees who were to take were contingent upon their being alive at the death of the last life tenant. In support of this position, they invoke the well-known rule of construction found in the commonly termed "pay and divide" cases. The rule was first stated in Moore v. Smith, 9 Watts 403, and is found in a host of cases since that time. In the comparatively recent case of Rickenbach Estate, 348 Pa. 121, 125, Mr. Justice Stearne, writing the opinion, referred to the rule in this wise:

"We have repeatedly decided that where there is a direction to pay and divide, but there is no separate and antecedent gift which is independent of the direc-

tion and time for payment, the legacy is *contingent*. The reason for the rule is that the gift itself is only *implied from a direction to pay*. Such a gift is necessarily inseparable from the direction, and hence must partake of its quality. If the direction is future and contingent *so must the gift be.*" (Italics supplied.)

The principle has been applied in numerous cases cited in the Rickenbach Estate. However, Mr. Justice Stearne referred to many cases in which the exception to the rule obtains. And the exception is that notwithstanding that there is no other gift than the direction to pay or distribute in the future, if it appears that the gift or distribution is postponed for the convenience of the fund or property, or to let in some other interest, the vesting will not be deferred until the period in question. The question is always one of substance and not of form, and as in all wills, the intent must be gathered from the entire will.

In McClure's Appeal, 72 Pa. 414, the bequest was to the widow for life and upon her death ". . . my real estate to be sold and equally divided amongst my nephews and nieces . . .". It was held that the remainders were vested because it was "manifest from the whole face of the will" that a division upon the widow's death was not intended to be a condition precedent to vesting but was merely a postponement of the time fixed for enjoyment. See Rickenbach Estate, supra, 126, and cases cited.

In Knerr's Estate, 130 Pa. Superior Ct. 383, Judge Parker, later to become a justice of the Supreme Court, referring to the application of the rule, stated on page 389:

"The court below fell into a common error which is clearly pointed out in the interpretation of this principle by Chief Justice Brown in Marshall's Estate, 262 Pa. 145, 149 . . . followed in Groninger's Estate, 268

Pa. 184, 191 . . . where he said : '. . . yet if such gift or distribution appears to be postponed for the convenience of the fund or property, or where the gift is only postponed to let in some other interest, the vesting will not be deferred till the period in question. Thus where stock is bequeathed to A. for life, and after his decease to trustees, upon trust to sell and . . . divide the proceeds . . . between C. and D.; as the payment or distribution is evidently deferred until the decease of A., for the purpose of giving precedence to his life interest, the ulterior legatees take a vested interest at the decease of the testator : 1 Jarm. on Wills 764. Where the enjoyment of the gift over is postponed to accommodate the estate, or for the payment of debts, or to meet any other burden first imposed, and not chiefly on account of the character of the donee, it is regarded as a decisive circumstance in favor of the immediate vesting.' "

Judge Parker in that case likewise points out that the question is always one of substance and not of form, the question being whether testator intended as a condition precedent that the legatees should survive the time appointed by testator for the payment of their legacies; that the whole will must be explored to decide the question and not alone the particular expression used in making the gift.

We are satisfied from a reading of testator's will that the testator in directing distribution to be withheld until the death of the last life tenant, did not intend it to operate as a condition precedent to vesting. The distribution was postponed in order to let in the particular estates for the purpose of giving precedence to the life interests. Under these circumstances we think the ulterior legatees, i.e., the nephews and nieces, took a vested interest subject to being divested should any of them die before the death of the life tenants :

Rickenbach Estate, supra, 127; Lloyd's Estate, 326 Pa. 230; Shaw's Estate, 326 Pa. 456, 461.

The words as used by testator import an alternative or substitutionary gift to the heirs-at-law of the nephew or niece deceased at the time of the death of the last life tenant. Examples of divesting by substitutionary words are found in Carstensen's Estate, 196 Pa. 325; Neel's Estate, 252 Pa. 394; Shaw's Estate, supra, 456; Borden's Estate, 44 D. & C. 279; Baumann v. Baumann et al., 63 D. & C. 681; Simpson's Estate, 304 Pa. 396, 402; Bender v. Bender, supra, 607; Gilmor's Estate, supra, 523; and Lippincott Estate, 349 Pa. 538.

In thus holding that the gift is subject to being divested at the death of a nephew or niece before the death of the last life tenant, we believe we are giving effect to the intention of testator as expressed in the words "or other heirs-at-law in accordance with the provisions of the intestate laws of the State of Pennsylvania". If we were to hold that the gift vested in the nephews and nieces absolutely at the death of testator, the effect would be to ignore the words "in accordance with the intestate laws of the State of Pennsylvania". Thus, if the gifts vested at the death of testator absolutely, the estate would be paid to the personal representative of the deceased nephew or niece. This might be an executor, and in that event the fund would be distributed in accordance with the terms of the will of the deceased nephew or niece. This, however, is not what testator stated should be done. He clearly expressed his method of distribution by declaring that it should be in accordance with the Intestate Act.

Unless a contrary intent is indicated by the terms of the will, the use of the word "heirs" means heirs as ascertained by the statutes of distribution: Wunder's Estate, 270 Pa. 281, 283; Simpson's Estate, supra, 396; Golden's Estate, 320 Pa. 4, 6. By the Intestate Act

of 1917, as amended, a surviving spouse is an heir as to both real and personal estate: Barnard Estate, 351 Pa. 313, 315.

A surviving wife is a statutory heir of her deceased husband: Barnard Estate, supra, 315; Verner Estate, 358 Pa. 280, 288; Wunder's Estate, supra, 281; Gilmor's Estate, supra, 523. Hence, Fred H. German's heirs were his wife and his adopted son, Henry W. German. We are not unaware of the fact that there may be some doubt as to whether Henry was ever legally adopted. That has become academic in view of the fact that the widow of Fred H. German and Henry W. German have entered into a stipulation by the terms of which they agree to divide equally any share that may come to them out of this estate by reason of the death of Fred H. German. We rule therefore that the fund will be distributed in four equal shares: one to each of the living nephews and nieces, and the fourth to the heirs of Fred H. German, who in this instance are Hilda L. German Miller and Henry W. German, they taking equally.

One other matter must be referred to and that is the assignment of interest as made by Estella Spencer Smith of 20 percent of her distributive share; of Irene Rice of two percent of her distributive share; and of Hilda German Miller in the amount of 10 percent of her share. All of the assignments are to Mr. Bolich, now of counsel for the living nephews and nieces. Mr. Bolich stated at the hearing that the amounts could be ascertained later. Accordingly, we direct that the accountant prepare a schedule of distribution in accordance with this opinion and with the agreement of Mr. Bolich and the accountant with respect to the assignments held by Mr. Bolich. If the question of the amounts of the assignments cannot be settled by counsel, it will be referred to the court for decision.