## Estate of Jerome N. Thompson, deceased. Appeal of Jane Thompson.

*Will—Decedent's debts—Personal property—Fund for payment of debts.*
Testator gave all of his personal property except certain specific items named to his wife, and directed that she should take possession thereof, without inventory or appraisement, immediately after his death, and hold it as her own "absolutely." He directed that his executors should sell his real estate not specifically devised, and pay his debts out of the proceeds. The proceeds of the real estate proved insufficient to pay his debts. *Held*, that the personal property bequeathed to the widow was liable for the deficiency.

Argued May 25, 1897. Appeal, No. 213, Jan. T., 1897, by Jane Thompson, from decree of O. C. Juniata Co., overruling exceptions to auditor's report. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, and FELL, JJ. Affirmed.

Exceptions to auditor's report.
From the report of Wilberforce Schweyer, Esq., the auditor,

it appeared that the testator died on April 27, 1895, leaving a will which was as follows:

"First. I confirm my wife, Jane Thompson, in the ownership of the farm situated in Walker township, bounded by lands of Daniel Zeigler, Isaac Auker, Reuben Diehl and my home farm, said farm having been bought from George Pile, and desire that she shall retain the same as her own in fee simple.

"Second. I give and bequeath to my wife, Jane Thompson, all my personal property, except as hereinafter disposed of, and direct that she shall be entitled to take possession thereof immediately after my death, without inventory or appraisement, and hold the same as her own absolutely; and I direct my executors to deliver to her the bonds I hold against Charles A. Thompson, and request her not to distress him by insisting upon their payment if he secures their payment to her.

"Third. I give and devise to my wife, Jane Thompson, a lot in Mexico, having a brick house erected thereon, bounded on the west by Main street, on the south side the road leading to the dam and on the north by lot of Austin Parker, said lot having been formerly owned by Dr. Cyrus McCurdy, to hold in fee simple.

"Fourth. I give and devise to my wife, Jane Thompson, my farm in Walker township, upon which I now live, bounded by lands of Charles Book, Reuben Diehl, Palmer Shellenberger, Jane Thompson, the village of Mexico and the Juniata river, including the woodland which extends out to the land of Daniel Zeigler, for the term of her natural life, and at her death I give and devise said farm and woodland to Charles A. Thompson in fee simple, subject, however, to the payment of twenty dollars per annum to the elders of the United Presbyterian church of Thompsontown and Mexico, which said sum of twenty dollars per annum I direct to be applied to fencing and keeping in order the cemetery on the hill east of Mexico, in which my father and mother are buried; and I charge said annual payment of twenty dollars on said farm and woodland forever.

"Fifth. I give and devise to Jennie T. Wright my interest in the land, being one-half, which I own in common with John Motzer, in Walker township, bounded by lands of Josiah Gingrich, James Adams, Alton S. Adams, Lewis Haubert and others and the public road, to hold in fee simple.

"Sixth. I give and bequeath two of the bonds of five hundred dollars each which I hold against Charles A. Thompson to the elders of the United Presbyterian church of Thompsontown and Mexico, the interest thereof to go to the support of the regular pastor, or supplies if there is no pastor of said church, forever, and if said bonds are paid I direct the principal of said sum to be safely reinvested and the interest applied to the same objects. I direct that the bonds bequeathed in this item shall not be collected by legal process as long as Charles pays the interest annually and keeps them well secured.

"Seventh. I give and bequeath to Chas. A. Thompson the eight-day clock which belonged to my father, James Thompson, deceased, and which now stands in our family room at my home.

"Eighth. I direct my executors hereinafter named to sell all my real estate not specifically hereinbefore devised, at public or private sale upon such reasonable terms as to them shall seem proper, and I authorize and empower them to make good and sufficient deeds therefor. I direct my just debts and funeral expenses to be paid out of the proceeds of said real estate, and I bequeath the residue of said proceeds of said real estate to my nephew, Wm. Porter Thompson, and my nieces, Martha Rumbaugh and Emma Wright, and the niece of my wife, Jennie T. Wright, share and share alike, each to receive the one-fourth thereof.

"Ninth. I appoint my friends, John Adams and H. Latimer Wilson, executors of this my last will."

The executors sold the real estate not specifically devised, but the proceeds thereof were not sufficient to pay the debts. The auditor, citing Walker's Est., 3 Rawle, 229; Crone's App., 103 Pa. 571; Risk's App., 110 Pa. 171, held that the personal property bequeathed to the wife was liable for the payment of the balance of the debts.

Exceptions to the auditor's report were dismissed by the court below, BELL, P. J., of the 24th judicial district, specially presiding, in the following opinion :

The auditor was clearly right in his conclusion that the testator had not in contemplation the question as to what property, aside from those mentioned in the eighth item of his will,

should first be subject to the payment of his debts. His thought evidently was that he had made ample provision for all indebtedness in said item eight. The contingency of such provision proving inadequate seems never to have occurred to his mind.

This being so, we think the auditor correctly decided that the indebtedness remaining unpaid, after the property mentioned in item eight had been exhausted, should be imposed on the fund primarily liable for the payment of debts, to wit, the personal property not specifically bequeathed.

At the argument it was contended that the use of the word "absolutely," as qualifying the ownership of the widow in the personal property bequeathed to her, indicated an intention on the part of her husband that she should take said property free from liability for debts. But the better opinion would seem to be that said term "absolutely" was used, not in the sense imputed to it by counsel for the widow, but in contradistinction to the phrase employed in item fourth, "for the term of her natural life," as limiting the devise of real estate. "Absolutely" was intended to define the duration and extent of the widow's estate; was employed to guard against the idea of a life estate only; had no reference to the question of debts, because that question had not occurred to the testator.

Another reason urged at the argument, why the personal property bequeathed to the widow should not be compelled to bear the burden of testator's unprovided-for indebtedness, was the use of the expression, "she shall be entitled to take possession thereof immediately after my death without inventory or appraisement." This contention is not without some seeming force, but is not of sufficient weight, we think, to turn the scale in favor of the widow. If the testator had intended to give a preference to his widow in this matter of what property should be primarily liable for debts, he could have so indicated by the use of a few simple words. Why should he adopt the roundabout method of so indicating such purpose by saying that there was no need of an appraisement? Was not the idea of the testator in dispensing with an inventory rather that, as he had made ample provision, as he thought, for his debts in item eighth, and as his wife was to have almost all the personal property, the holding of an appraisement would be but an idle cere-

mony, annoying, possibly, to her, and subserving no useful purpose? The possible contingency of the insufficiency of the assets mentioned in item eighth to satisfy his indebtedness, had not entered the testator's mind. Hence he made no reference to such contingency, and made no provision for its happening.

But the present controversy has arisen because of the happening of this very contingency unthought of and unprovided for by the testator, and, as we have before said, we see no other way of settling the question than by having recourse to the elementary principle, that the primary fund for the payment of debts is personal property not specifically devised.

In Ann Myer's Appeal, 48 Pa. 26, there was a similar provision that the wife should "retain" as much of the personal property "as she chose" without an appraisement, but the Supreme Court did not deem this a controlling feature in the case.

This is all we deem necessary to add to what has been said by the auditor, in his report, on the question as to what property shall make good the deficiency arising from the fact that the property mentioned in item eight proved insufficient to pay the debts.

*Errors assigned* were overruling exceptions to auditor's report.

*L. E. Atkinson*, of *Atkinson & Pennell*, for appellant.—The personal property bequeathed to the wife was the fund proper to make up the deficiency: Murdoch's App., 31 Pa. 50 ; Webb v. Hitchins, 105 Pa. 95 ; Lynn v. Downes, 1 Yeates, 518 ; Findlay v. Riddle, 3 Binn. 149 ; Hopkins v. Glunt, 111 Pa. 290 ; Middleswarth v. Blackmore, 74 Pa. 414 ; Walker's Est , 3 Rawle, 239 ; Broom's Leg. Maxims, *478 ; Duncan v. Alt, 3 Penrose & Watts, 382 ; Isenhart v. Brown, 1 Edw. Ch. 411 ; Pollard v. Pollard, 1 Allen, 490 ; Hubbard v. Hubbard, 6 Metcalf, 50 ; 2 Redfield on Wills, 363 ; Harper's App., 111 Pa. 243 ; App. of Trustees of The University of Penna., 97 Pa. 187 ; Myer's App., 48 Pa. 26 ; Baker & Wheeler's App., 115 Pa. 593 ; Woelpper's App., 126 Pa. 562 ; Eichelberger's App., 135 Pa. 160 ; Moyer's App., 160 Pa. 263 ; Cameron v. Coy, 165 Pa. 290 ; Still v. Spear, 45 Pa. 168.

*Will L. Hoopes* and *J. Howard Neely*, with them *J. C. Bucher*, for appellee.—General legacies must abate to pay debts before specific legacies and specific devises: 1 Roper on Legacies, *242; Walker's Est., 3 Rawle, 229; Crone's App., 103 Pa. 571; Risk's App., 110 Pa. 171; Martin v. Fry, 17 S. & R. 426; Barnett's App., 104 Pa. 342; 3 Pomeroy's Eq. Jur. sec. 1140; Act of April 8, 1833, P. L. 249; App. of Trustees of the University of Penna., 97 Pa. 187; Barry's Est., 13 Phila. 310; McGlaughlin v. McGlaughlin, 24 Pa. 22; Harper's App., 111 Pa. 243; Waln's Est., 109 Pa. 479; McMahon's Est., 132 Pa. 175; Knecht's App., 71 Pa. 333; 3 Rhone's Orphans' Court Practice, page 373; Eavenson's App., 84 Pa. 172; Stuard's Est., 17 W. N. C. 14.

PER CURIAM, July 15, 1897:

It is unnecessary to recite the facts upon which the questions involved in this contention depend. They are sufficiently presented in the opinion of the learned president of the 24th judicial district who specially presided at the hearing.

From a careful consideration of the record we are all satisfied there was no error in holding that the personal property bequeathed by the testator to his widow is primarily liable to the payment of the residue of his debts, and in decreeing accordingly. There is nothing in the record that would justify us in sustaining any of the specifications; nor do we think any of the questions involved requires further discussion. They have been sufficiently considered and correctly disposed of by the court below.

For reasons given in the opinion referred to, the decree is affirmed and appeal dismissed at appellant's costs.