628

## Reed's Estate

*Theodore Lane Bean*, for accountants.

*F. Kenneth Moore, Nelson P. Fegley,* and *Joseph K. Fornance*, for legatees.

*Victor J. Roberts*, for surviving spouse.

HOLLAND, P. J., April 14, 1942.— . . . The Pennsylvania Department of Revenue has presented to the accountants bills for inheritance taxes on two trusts, one of $10,000, which is a trust inter vivos, Montgomery National Bank, trustee for Evelyn D. Roncaglia, upon which the tax on the life interest is $523.15, and on the remainder interest $476.85; and the other bill is for taxes on trust inter vivos with First National Bank of Conshohocken, trustee in trust for Jessie Reed, wherein the tax upon the life interest is fixed at $398.30, and the tax on the remainder interest at $601.70. The question is submitted whether these inheritance taxes on these trusts inter vivos are payable out of this decedent's estate or whether they are payable out of the said trusts.

The beneficiaries of the trusts inter vivos cite Crook's Estate, 36 D. & C. 58, as authority that the taxes in question should be paid out of this estate, and Maud M. Reed, the surviving wife of decedent, and the only party interested in decedent's estate who seems to have taken any interest in this controversy, cites Ely's Estate, 28 D. & C. 663, contra. In our opinion, neither of these cases is direct authority on the question at issue. Section 1 of the Act of July 2, 1937, P. L. 2762, adding to section 48 of the Fiduciaries Act of June 7, 1917, P. L. 447, does not apply to the normal Pennsylvania transfer inheritance tax at all, but deals only with the Federal estate tax and the additional Pennsylvania transfer inheritance tax on account of credits allowed by the Federal Government, which additional transfer inheritance tax is collected by provisions of the Act of May 7, 1927, P. L. 859. Both Crook's Estate and Ely's Estate, supra, deal with these estate taxes. We are, therefore, reduced to the interpretation of the words used by testator in his will to determine whether he intended the taxes on the two trusts inter vivos, being the normal Pennsylvania transfer inheritance tax, paid out of the residue of the estate.

Item 10 of the will provides: "I order and direct that all inheritance, legacy, succession, or similar duties or taxes shall be paid out of my residuary estate." There is not the slightest reference in this item of the will or in any other item of the will specifically to these trusts inter vivos or to any other instrument or instruments disposing of property in the lifetime of decedent. To hold that taxes in the nature of transfer inheritance taxes on property not included in the property of which he died possessed were to be taken out of his residuary estate would be to interpret this section of the will to mean that he was granting a legacy or legacies from his residuary estate to the beneficiaries of the instruments transmitting property in his lifetime. To make such an interpretation valid there would

have to be something found in the will to identify the beneficiaries of such implied legacies. This would be extending the ordinary direction in a will for the payment of inheritance taxes from the residue to an unwarranted length. We are of the opinion that item 10 of the will is nothing more than the ordinary stereotyped and familiar clause found in so many wills directing all inheritance taxes on gifts in the will to be paid out of the residue in order that such gifts, other than the residue, may go to the beneficiaries thereof unreduced. We hold, therefore, that these Pennsylvania transfer inheritance taxes in question upon these two trusts inter vivos must be borne by the said trusts inter vivos and are not payable from this estate. The claims, therefore, of the Department of Revenue are dismissed.

The widow, Maud M. Reed, having been married to decedent after the date of the will, is entitled to such proportion of the estate as she would be entitled to under the intestate law, which is $5,000, and one half of the balance real and personal. She has already received the $5,000 allowance by separate proceeding. She claims that she should receive one half of the balance for distribution before the payment of the legacies given under the will of Annie J. Reed and surcharged as debts against this estate, as above indicated, and that said legacies should be paid out of the other half going under the terms of the will.

In her brief she urges this calculation pursuant to an argument consisting of four stages. First, the legacies, being a surcharge on the estate of decedent, the deceased executor of the will of Annie J. Reed, become claims or debts against his estate, the legatees becoming creditors, citing Boggs' Estate, 56 Montg. Co. 281. Second, a testator, as among beneficiaries of his estate, may designate out of what part of his estate his debts shall be paid, citing Shaffer's Estate, 262 Pa. 15, and Thompson's Estate, 182 Pa. 340. Third, the marriage of a decedent or the birth of a child after the date of

the will revokes the will only to the extent of the widow's or child's interest, all other provisions not in conflict with that interest remaining in force, citing Coates v. Hughes, 3 Binn. 498, Perry's Estate, 4 Pa. C. C. 107, and Price's Estate, 26 D. & C. 141. Fourth, all gifts contained in the will must come out of the part left after deduction of the share under the intestate law going to the widow or afterborn child, citing Willard's Estate, 68 Pa. 327, and Jacobs' Estate, 1 D. & C. 6.

The widow draws the conclusion from this course of reasoning that, testator having directed these legacies, which are debts against his estate, to be paid out of the "residue" of his estate, and the "residue" being a gift under the will, remaining undistributed, they must be paid out of the part going under the will after the deduction of her share as determined by the intestate law.

The court concedes that the principles implicit in the four stages of the argument above expounded constitute well-established law. But we cannot agree with its application to this case. The fallacy in the conclusion drawn is that the debts of a decedent directed to be paid by decedent are exactly the same kind of a legacy as one given by the will to a named legatee and payable out of the balance for distribution. The legacy to a legatee named in the will is a direct legacy payable straight from the balance for distribution to the legatee. The direction to pay debts is an indirect legacy in favor of a legatee who is thereby relieved from paying all or part of those debts which, but for the direction, he would be obligated to pay or have deducted from his award.

A familiar example of such an indirect legacy is the not unusual case of a direction to pay out of her estate all her funeral expenses and medical expenses, contained in the will of a married woman who dies leaving a surviving husband. Her husband is liable for her

funeral and medical expenses, and would have to pay them but for this direction in the will. It is not a direct legacy to him because the money is paid direct to these two classes of creditors, but it is held in law to be an indirect legacy to him because it relieves him of what would otherwise be his obligation payable out of his own assets or deductible from any award due him from his deceased wife's estate. It is upon this theory that these particular debts are allowed out of a deceased married woman's estate in obedience to such a direction.

In like manner the direction of this decedent to pay out of the residue of his estate these debts, consisting of these legacies with which his estate has been surcharged, amounts in effect to an indirect legacy to the widow as to one half thereof, because but for such direction her one-half share would be depleted by that amount. This would be the corollary to her argument. And, right here is the decisive point of the issue. The widow cannot take the benefit of any legacy direct or indirect conferred upon her by the will because as to her no will exists. The theory that the widow's share under these circumstances is determined strictly under the intestate laws and as though no will existed runs uniformly through all the cases, an example of which is Jacobs' Estate, 1 D. & C. 6, cited by the widow in her brief.

The rule must work both ways. She cannot claim, on the one hand, that as to her there is no will, and that her share is determined by the intestate law, and, on the other hand, point to a provision in the will and claim that it augments her share. The first inquiry is as to what her share would be if no will existed, or, obversely, had decedent died intestate. Obviously by this procedure all debts would be paid first and the next step would be the calculation of her share.

Toomer et al. v. Van Antwerp Realty Corp. et al., 189 So. (Alabama 1939) 549, is cited as holding that, in

effect, the statute is read into the will, quoting the excerpt, "In short, the statute, when read into the will, makes the will provide for the pretermitted child or children [affected the same as the widow] as though such provision as the statute makes had been written into the will by the testatrix". From this, we take it, it is argued that the case holds that the widow or pretermitted child not only becomes a legatee under the will but takes the benefit of all other terms of the will. Aside from the fact that this is a decision upon a code regulating the rights of widows and pretermitted children in such cases, this cited case lays down no such principle. Throughout the decision the ancient principle that there is no will as to such pretermitted beneficiaries and that their interests are determined by the intestate law is reiterated and affirmed. The two propositions that as to a widow there is no will, and that she derives a benefit directly or indirectly under the will, simply will not stand together.

We need only state our conclusion that these legacies in question, which are debts against the decedent's estate, must be awarded first, and the widow's share awarded from the balance after this deduction, and we so hold.